## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### CASE NO. 12-CIV-3412-NATHAN

LANDON ROTHSTEIN, JENNIFER DAVIDSON,
ROBERT DAVIDSON, and IHOR KOBRYN,
individually and on behalf of all others similarly situated,

       Plaintiffs,

v.

ALLY FINANCIAL, INC. f/k/a GMAC INC., ALLY BANK
f/k/a GMAC BANK, JOHN DOE CORPORATION,
BALBOA INSURANCE COMPANY, MERITPLAN INSURANCE
COMPANY, and NEWPORT MANAGEMENT CORPORATION.

       Defendants.

_____/

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS BALBOA INSURANCE COMPANY, MERITPLAN INSURANCE COMPANY, AND NEWPORT MANAGEMENT CORPORATION'S
## MOTION TO DISMISS THE AMENDED COMPLAINT

## TABLE OF CONTENTS

INTRODUCTION......................................................................................................... 1

BACKGROUND ........................................................................................................... 2

   I.     FACTUAL BACKGROUND ......................................................................... 2

       A.  Landon Rothstein ............................................................................... 3

       B.  Jennifer and Robert Davidson .......................................................... 3

       C.  Ihor Kobryn...................................................................................... 3

       D.  Allegations Relating To GMAC-Balboa Relationship...................... 4

   II.    PROCEDURAL BACKGROUND .................................................................. 4

MOTION TO DISMISS STANDARD ........................................................................... 5

ARGUMENT ................................................................................................................. 5

   I.     PLAINTIFFS' CLAIMS ARE BARRED BY THE FILED RATE DOCTRINE. .. 5

   II.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER §
         1962(C) OF RICO. ................................................................................. 10

       A.  Plaintiffs Fail To Allege A RICO Violation. ................................. 11

          1.    Plaintiffs Have Not Alleged That The Balboa Defendants Committed The
              RICO Predicate Acts........................................................... 11

             a.   Plaintiffs' Allegations Do Not Constitute A Scheme To Defraud. ................ 12

             b.   Plaintiffs Have Not Alleged That The Balboa Defendants Are Responsible
                 For The Alleged Instances Of Mail Or Wire Fraud. ..................... 16

             c.   Plaintiffs Have Not Alleged And Cannot Allege That The Balboa
                 Defendants Committed Honest Services Fraud As A RICO Predicate Act. 17

          2.    Plaintiffs Have Not Alleged That The Balboa Defendants Participated In The
              Operation Or Management Of The RICO Enterprise. ..................... 18

       B.  Plaintiffs Have Not Alleged That The RICO Violations Caused An Injury To
          Their Business Or Property. ............................................................ 19

          1.    Plaintiffs' Alleged Injury Was Caused By Their Own Failure To Maintain
              Voluntary Insurance And Not By The Alleged RICO Scheme. ..................... 19

          2.    Plaintiffs Do Not Allege Any Injury To Their Business Or Property That Was
              The Result Of The Alleged Honest Services Fraud........................... 20

   III.   THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR
         CONSPIRACY TO VIOLATE RICO PURSUANT TO 18 U.S.C. § 1962(D). .... 21

   IV.   THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR
         VIOLATION OF RESPA BECAUSE PLAINTIFFS HAVE FAILED TO
         ALLEGE THAT THE BALBOA DEFENDANTS' CONDUCT RELATED TO A
         "REAL ESTATE SETTLEMENT SERVICE".................................... 21

CONCLUSION .......................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Arnett v. Bank of Am. N.A.*,
 -- F. Supp. 2d --, 2012 WL 2848425 (D. Ore. July 11, 2012) ................................................. 23

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)............................................................................................................. 5, 14

*Associated Wrecking, Inc. v. Local 94 Pension Fund*,
 No. 92-CIV-1841, 1994 WL 118987 (S.D.N.Y. Mar. 31, 1994)............................................ 15

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007) ................................................................................................................. 5

*Bloom v. Martin*,
 77 F.3d 318 (9th Cir. 1996) .................................................................................................... 22

*Browning Ave. Realty Corp. v. Rosenshein*,
 774 F. Supp. 129 (S.D.N.Y. 1991) ......................................................................................... 16

*Bryan v. BellSouth Comm'ns*,
 377 F.3d 424 (4th Cir. 2004) .................................................................................................... 9

*Calico Trailer Mfg. Co. v. Ins. Co. of N. Am.*,
 No. LR-C-93-717, 1994 WL 823554 (E.D. Ark. Oct. 12, 1994)............................................. 9

*Citadel Mgmt., Inc. v. Telesis Trust, Inc.*,
 123 F. Supp. 2d 133 (S.D.N.Y. 2000) .................................................................................... 21

*City of New York v. Smokes–Spirits.com, Inc.*,
 541 F.3d 425 (2d Cir. 2008) ................................................................................................... 18

*Coll v. First Am. Title Ins. Co.*,
 642 F.3d 876 (10th Cir. 2011) .................................................................................................. 5

*Connecticut Nat'l Bank v. Fluor Corp.*,
 808 F.2d 957 (2d Cir. 1987) ................................................................................................... 15

*Cortec Indus., Inc. v. Sum Holding L.P.*,
 949 F.2d 42 (2d Cir. 1991) ..................................................................................................... 14

*DeFalco v. Bernas*,
 244 F.3d 286 (2d Cir.2001) .................................................................................................... 11

*Dietrich v. Bauer*,
 76 F. Supp. 2d, 312 (S.D.N.Y. 1999) ..................................................................................... 19

*DiVittorio v. Equidyne Extractive Indus.*,
    822 F.2d 1242 (2d Cir. 1987) .......................................................... 16

*Dolan v. Fid. Nat'l Title Ins. Co.*,
    365 F. App'x. 271 (2d Cir. 2010) ....................................................... 6

*Dowling v. United States*,
    473 U.S. 207 (1985)...................................................................... 15

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 1998) ...................................................... 18, 21

*Fresh Meadow Food Servs., LLC v. RB 175 Corp.*,
    282 F. App'x. 94 (2d Cir. 2008) ...................................................... 12

*G-I Holdings, Inc. v. Baron & Budd*,
    238 F. Supp. 2d 521 (S.D.N.Y. 2002) ............................................... 19

*Guebara v. Saxon Mortg.*,
    No. 11-427, 2011 WL 1670762 (E.D. Cal. May 3, 2011) .......................... 22

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
    954 F.2d 485 (8th Cir. 1992), *cert. denied*, 504 U.S. 957(1992)................ 10

*Hemi Grp., LLC v. City of New York*,
    130 S. Ct. 983 (2010)..................................................................... 19

*In re Am. Express Co. Shareholder Litig.*,
    39 F.3d 395 (2d Cir.1994) .............................................................. 19

*In re Sumitomo Copper Litig.*,
    995 F. Supp. 451 (S.D.N.Y. 1998) ................................................ 12, 17

*In re Title Ins. Antitrust Cases*,
    702 F. Supp. 2d 840 (N.D. Ohio 2010)............................................... 6

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
    62 F.3d 69 (2d Cir. 1995) ............................................................... 14

*Johnson Elec. N. Am., Inc., v. Mabuchi Motor Corp.*,
    98 F. Supp. 2d 480 (S.D.N.Y. 2000) ................................................. 15

*Kilkenny v. Law Office of Cushner and Garvey LLP*,
    No. 08-cv-588, 2012 WL 1638326 (S.D.N.Y. May 8, 2012).................... 13

*Marcus v. AT&T Corp.*,
    138 F.3d 46, 59 (2d Cir. 1998) ..................................................... 6, 10

*McNeary-Calloway v. JP Morgan Chase Bank, N.A.*,
   863 F. Supp. 2d 928 (N.D. Cal. 2012) ................................................. 23

*Mills v. Polar Molecular Corp.*,
   12 F.3d  1170 (2d. Cir. 1993) ............................................................. 16

*Moore v. PaineWebber, Inc.*,
   189 F.3d 165 (2d Cir. 1999) ............................................................... 13

*Morales v. Attorney's Title Ins. Fund, Inc.*,
   983 F. Supp. 1418 (S.D. Fla.1997) ...................................................... 9

*Morris v. Wells Fargo Bank N.A.*,
   No. 11-474, 2012 WL 3929805 (W.D. Pa. Sept. 7, 2012) ................ 22, 23

*Moss v. Morgan Stanley Inc.*,
   719 F.2d 5 (2d Cir. 1983) .................................................................... 11

*Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.*,
   101 F.3d 900 (2d Cir.1996) ................................................................ 11

*Porcelli v. United States*,
   404 F.3d 157 (2d Cir. 2005) ............................................................... 12

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993)............................................................................ 18

*Rosner v. Bank of China*,
   528 F. Supp. 2d 419 (S.D.N.Y. 2007) ............................................... 11

*Roussin v. AARP, Inc.*,
   664 F. Supp. 2d 412, 415-16 (S.D.N.Y. 2009) ..................................... 7

*Simon v. KeySpan Corp.*,
   694 F.3d 196, 205 (2d Cir. 2012) ........................................................ 6

*Sperber v. Boesky*,
   849 F.2d 60 (2d Cir. 1988) ................................................................. 19

*Stevens v. Union Planters Corp.*,
   No. 00-CV-1695, 2000 WL 33128256 (E.D. Pa. Aug. 22, 2000) ....... 9, 10

*Sun City Taxpayers' Ass'n v. Citizens Utilities Co.*,
   847 F. Supp. 281 (D. Conn. 1994) *aff'd*, 45 F.3d 58 (2d Cir. 1995)........ 10

*Texas & Pac. Ry Co. v. Abilene Cotton Oil Co.*,
   204 U.S. 426 (1907)............................................................................ 5

*TSC Indus., Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976) ........................................................................................................ 13

*United States v. Autuori*,
    212 F.3d 105 (2d Cir. 2000) ........................................................................................... 12

*United States v. Dowling*,
    739 F.2d 1445 (9th Cir. 1984) ......................................................................................... 15

*United States v. Gole*,
    158 F.3d 166 (2d Cir. 1998) ........................................................................................... 12

*United States v. Mittelstaedt*,
    31 F.3d 1208 (2d Cir. 1994) ........................................................................................... 13

*Vicon Fiber Optics Corp. v. Scrivo*,
    201 F. Supp. 2d 216 (S.D.N.Y. 2002) ............................................................................ 19

*Wah Chang v. Duke Energy Trading & Mktg., LLC*,
    507 F.3d 1222, 1225 (9th Cir. 2007) ................................................................................ 6

*Wegoland Ltd. v. NYNEX Corp.*,
    27 F.3d 17, 19 (2d Cir. 1994) ..................................................................................... 6, 10

*Weinberger v. Mellon Mortg. Co.*,
    No. 98-2490, 1998 WL 599192 (E.D. Pa. Sept. 10, 1998) ...................................... 14, 16

**Statutes**

12 U.S.C. § 2601 ......................................................................................................................... 2

12 U.S.C. § 2607 ................................................................................................................... 5, 22

18 U.S.C. § 1341 ....................................................................................................................... 11

18 U.S.C. § 1343 ....................................................................................................................... 11

18 U.S.C. § 1346 ....................................................................................................................... 11

18 U.S.C. § 1961 ....................................................................................................................... 11

18 U.S.C. §§ 1961-1968 ............................................................................................................. 4

N.H. Rev. Stat. Ann. § 412:15 ................................................................................................... 9

N.H. Rev. Stat. Ann. § 412.16 ................................................................................................... 9

N.Y. Ins. Law § 2303 (Consol. 2012) ....................................................................................... 7

N.Y. Ins. Law § 2314 (Consol. 2012) ........................................................................................... 8

N.Y. Ins. Law § 2321 (Consol. 2012) ........................................................................................... 8

Tex. Ins. Code Ann. § 2251.052 (West 2012) ............................................................................... 7

Tex. Ins. Code Ann. § 2251.101 (West 2012) ............................................................................... 7

Tex. Ins. Code Ann. § 2251.103 (West 2012) ............................................................................... 7

**Regulations**

24 C.F.R. § 3500.2 (2012) ........................................................................................................... 22

Defendants Balboa Insurance Company ("BIC"), Meritplan Insurance Company ("MIC"), and Newport Management Corporation ("NMC," together with BIC and MIC the "Balboa Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Amended Complaint, September 29, 2012, ECF No. 25, ("Compl.") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## <u>INTRODUCTION</u>

Plaintiffs' Amended Complaint is replete with unsubstantiated and overbroad generalizations but severely lacking in the requisite specific factual allegations to support Plaintiffs' legal theories. The barebones factual allegations offered about the Plaintiffs' own experience with lender-placed hazard insurance ("hazard LPI") are largely innocuous. Plaintiff Landon Rothstein alleges that he was charged slightly more than one hundred dollars by GMAC Mortgage ("GMACM") for three months of lender-placed hazard insurance ("LPI") obtained for his property in Splendora, Texas. Compl. ¶ 21. Plaintiffs Jennifer and Robert Davidson allege that they were charged approximately $240 by GMACM for three months of hazard LPI for their property in New Hampshire, and Plaintiff Ihor Kobryn alleges that he was charged approximately $1,260.00 by GMACM for four months of hazard LPI for his property on Staten Island. Compl. ¶¶ 22-23. The Amended Complaint provides no information about how much LPI coverage was in place for each property or how much Plaintiffs believe this LPI coverage was worth. Nonetheless, the Amended Complaint contends that all the Plaintiffs were victims of a massive fraudulent scheme enacted by GMACM and Defendants to bill Plaintiffs for inflated or unauthorized charges.

Importantly, the Amended Complaint does not allege that GMACM lacked authorization to obtain LPI for Plaintiffs' properties when they failed to maintain adequate voluntary insurance or that GMACM was not authorized to bill Plaintiffs for any LPI it obtained. Likewise, the

Amended Complaint does not contend that Plaintiffs' LPI was deficient or that its total cost was commercially unreasonably.  In truth, it is difficult to ascertain exactly what Plaintiffs find objectionable about their LPI.  Even so, Plaintiffs attempt to assert claims for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, and Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, against the Balboa Defendants.

These claims are all fundamentally flawed in the first instance because they are barred by the filed rate doctrine.  The rates used to calculate the premiums for Plaintiffs' hazard LPI are based on BIC or MIC rates that comply with the applicable state filing laws and are approved wherever required by the applicable state regulators.  Accordingly, these rates are immune from challenge in a private civil suit.  Further, when stripped of its unsupported legal conclusions and sweeping generalizations, the Amended Complaint falls well short of stating any claims against the Balboa Defendants.  With respect to the asserted RICO claims, Plaintiffs have failed to plead predicate RICO acts, a RICO injury, or any causal link between the vague predicate act and the poorly drawn RICO injury.  Plaintiffs have also failed to state a claim for RESPA violations against the Balboa Defendants because they have not alleged that the Balboa Defendants' conduct related to a "real estate settlement service."

For all of these reasons, Plaintiffs' claims against the Balboa Defendants should be dismissed with prejudice.

## BACKGROUND[1]

### I.    FACTUAL BACKGROUND

Nearly every mortgage agreement includes a provision requiring the borrower to maintain adequate homeowner's insurance to protect both the borrower's interest in his or her

---

[1] These allegations are taken from Plaintiff's Complaint.  The Balboa Defendants do not admit them by including them here, but merely reference them for purposes of resolving this motion.

home and the lender's interest in securing the collateral underlying its mortgage loan.  Compl. ¶ 45.  The vast majority of borrowers comply with this requirement, but, for those who do not, mortgage agreements generally authorize the lender to obtain insurance for the borrower's property and to charge the cost of that insurance to the borrower.  *Id.*  This insurance is commonly referred to as lender-placed insurance or LPI.  Mortgage servicers, like GMACM, typically enter into arrangements with third party vendors who perform the servicers' tracking duties, *i.e.* they monitor the servicers' loan portfolios to determine whether borrowers have the required insurance coverage, notify the borrowers in the event of a lapse or coverage deficiency, and secure LPI when needed.  Compl.¶ 6.

### A.    Landon Rothstein

The Amended Complaint alleges that Landon Rothstein has a mortgage loan serviced by GMACM on property located at 97 County Road 3701, Splendora, Texas.  Compl. ¶ 21.  The Amended Complaint further alleges that Rothstein was charged $105.00 by GMACM to reimburse it for the cost of LPI obtained by GMACM from MIC for the mortgaged property from October 6, 2010 to January 4, 2011.  *Id.*

### B.    Jennifer and Robert Davidson

The Amended Complaint alleges that Jennifer and Robert Davidson have a mortgage loan serviced by GMACM on property located at 32 Dunbarton Estates, Nottingham, New Hampshire.  Compl. ¶ 22.  It further alleges that the Davidsons were charged $239 by GMACM to reimburse it for the costs of LPI obtained by GMACM from BIC for the mortgaged property from April 14, 2009 to July 4, 2009.  *Id.*

### C.    Ihor Kobryn

The Amended Complaint alleges that Ihor Kobryn has a mortgage loan serviced by GMACM on a property located at 29 Meredith Avenue, Staten Island, New York and that he was

charged $1,260.78 by GMACM for the cost of LPI obtained by GMACM from MIC for the

mortgaged property from January 19, 2012 to May 22, 2012.  Compl. ¶ 23.

### D.      Allegations Relating To GMAC-Balboa Relationship

Plaintiffs allege that in 2003 "GMACM entered into an agreement to purchase LPI from

Balboa and Meritplan" and that "GMACM also hired Newport to perform insurance tracking on

its behalf."  Compl. ¶ 66.  Plaintiffs allege that these parties devised a kickback scheme at the

inception of their relationship that required BIC and MIC to pay "secret rebates" to GMACM

while borrowers are billed the full price of the LPI.  *Id.* ¶ 67.  Plaintiffs contend that the

commissions are paid by BIC and MIC to an affiliate of GMACM, defendant John Doe.  *Id.* ¶

73.  Plaintiffs allege that this unidentified affiliate is not a bona fide insurance agent and did not

perform insurance agency functions to BIC or MIC.  *Id.* ¶ 74.  According to Plaintiffs, GMACM

also incorporates the gross insurance charges into its servicing advances and "to the extent

borrowers fail to pay, loan owners bear the inflated charges through reduced loan proceeds and

higher loss severities."  *Id.* ¶ 67.

Plaintiffs also allege that NMC provides free tracking services to GMACM, and that BIC

and MIC pay NMC instead of GMACM.  *Id.* ¶ 69.  Plaintiffs allege that NMC's payments are

"derived from the gross premiums that GMACM pays to Balboa and Meritplan for LPI and is

routed from Balboa and Meritplan to Newport via 'intercompany expense allocations.'"  *Id.*

According to Plaintiffs, the free tracking services "constitute rebates/kickbacks in kind."  *Id.* ¶

70.

### II.     PROCEDURAL BACKGROUND

The Complaint asserts three claims against the Balboa Defendants:  (1) Violation of

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968; (2) Conspiracy to

Violate RICO, 18 U.S.C. § 1962(d); and (3) Violation of the Real Estate Settlement Procedures

Act, 12 U.S.C. § 2607(a).  Four additional claims are asserted only against Ally Bank and Ally

Financial.

## MOTION TO DISMISS STANDARD

To survive a motion to dismiss, a plaintiff's pleadings must contain factual allegations

that are "enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007).  Indeed, a plaintiff's claim must be "plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While the allegations in the Amended Complaint

are assumed to be true, the allegations must amount to more than mere labels and conclusions or

a mere formulaic recitation of the elements of a cause of action.  *Twombly*, 550 U.S. at 545.

Legal conclusions are not entitled to an assumption of truth.  *Iqbal*, 556 U.S. at 678-79.

## ARGUMENT

### I.  PLAINTIFFS' CLAIMS ARE BARRED BY THE FILED RATE DOCTRINE.

The filed rate doctrine mandates dismissal of Plantiffs' claims against the Balboa

Defendants because Plaintiffs' premiums were based on insurance rates that were filed with and

approved by the applicable state regulators.  For over a hundred years, courts have repeatedly

and consistently held that judicial recourse against a regulated entity based upon allegations that

the entity's filed rate is too high, unfair, or unlawful are barred.  *Texas & Pac. Ry Co. v. Abilene*

*Cotton Oil Co.*, 204 U.S. 426, 440 (1907).  The doctrine has been applied to regulated entities in

a variety of contexts, including insurance carriers.  *See Coll v. First Am. Title Ins. Co.*, 642 F.3d

876, 890 (10th Cir. 2011) (listing cases applying doctrine to insurers).  At its core, the filed rate

doctrine provides that an individual has no legal right to be charged any rate other than the filed

rate.  The doctrine's rationale is two-fold.  First, the doctrine preserves a regulator's authority to

determine the reasonableness of rates and prohibits courts from second-guessing regulator's

determination in the regard.  *See, e.g., In re Title Ins. Antitrust Cases*, 702 F. Supp. 2d 840, 849-50 (N.D. Ohio 2010) (*citing Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 19 (2d Cir. 1994)).  Second, the doctrine ensures that regulated entities charge only those rates that have been approved and thereby prevents discrimination against certain consumers.  *Id.* (*citing Marcus v. AT&T Corp.*, 138 F.3d 46, 59 (2d Cir. 1998)).  The combined force of both justifications, often referred to as the nonjusticiability and nondiscrimination prongs, has given rise to an extremely robust doctrine whose "fortification against direct attack is impenetrable." *Wah Chang v. Duke Energy Trading & Mktg., LLC*, 507 F.3d 1222, 1225 (9th Cir. 2007).  Whenever either prong is implicated by the asserted causes of action, the filed rate doctrine applies.  *See Dolan v. Fid. Nat'l Title Ins. Co.*, 365 F. App'x. 271, 276 (2d Cir. 2010) (*citing Marcus*, 138 F.2d at 62).  The applicability of the doctrine "does not depend on the culpability of the defendant's conduct or the possibility of inequitable results."  *Simon v. KeySpan Corp.*, 694 F.3d 196, 205 (2d Cir. 2012) (internal citations omitted).

Either BIC or MIC has an approved lender-placed hazard insurance program in every state, including the states where the Plaintiffs' properties are located.  This means that in Texas, New York, and New Hampshire, BIC or MIC has submitted its lender-placed insurance rates and forms to the applicable state regulator, and the rates and forms for the program have been approved by that regulator.  Plaintiffs' LPI premiums were then calculated using the filed and approved rates for their state.  Accordingly, the filed rate doctrine prohibits Plaintiffs from challenging the LPI rate, any specific component of the approved rates, or premiums calculated from the approved rates in a private civil action.

MIC is an admitted carrier in Texas where Plaintiff Rothstein's property is located.  In Texas, MIC's hazard LPI rates were filed with and approved by the Texas Department of

Insurance ("TDI"), the administrative agency charged under Texas law with responsibility for determining whether property insurance rates are "excessive, inadequate, unreasonably, or unfairly discriminatory for the risks to which the rate applies." *See* Tex. Ins. Code Ann. § 2251.052(b) (West 2012). Texas' insurance code requires property insurers to file "all rates, applicable rating manuals, supplementary rating information, and additional information required" with the insurance commissioner. Tex. Ins. Code Ann. § 2251.101(a) (West 2012). The commissioner shall disapprove the rate if he/she "determines that the rate does not comply with the [statutory requirements]." *Id.* § 2251.103(a) (West 2012). Pursuant to this scheme, MIC submitted its hazard LPI rates, rating schedules and associated forms to the Texas TDI. The rates were reviewed by the TDI and approved. *See* Declaration of Kurt Petersen ("Petersen Decl.") at ¶ 4; Meritplan Insurance Company, Rate Filing FOH_09-5923, attached as Exhibit A.[2] Plaintiff Rothstein LPI premiums were calculated using the approved rates. *See* Petersen Decl. ¶ 6.

MIC is also an admitted carrier in New York where Plaintiff Kobryn's property was located. MIC's hazard LPI rates were filed with and approved by the New York Department of Insurance, the administrative agency charged under New York law with the responsibility to review property insurance rates to ensure that they are not "excessive, inadequate, unfairly discriminatory, destructive of competition or detrimental to the solvency of insurers." N.Y. Ins. Law § 2303 (Consol. 2012).[3] Rates must be submitted to the superintendent along with their supporting information. *Id.* § 2305(c). Insurers are barred from charging premiums in excess of

---

[2] The Court may take judicial notice of the filing and approval of insurance rates by the Superintendent. *See Roussin v. AARP, Inc.*, 664 F. Supp. 2d 412, 415-16 (S.D.N.Y. 2009) (taking judicial notice of rate filings and the Superintendent's approval of those rates).

[3] On October 3, 2011 the New York Department of Insurance was combined with the New York State Banking Department to form the Department of Financial Services. Today the Department of Financial Services is the administrative agency with authority over property insurance rates, but when MIC's rates were filed and approved the Department of Insurance was still in existence.

the filed rates.  N.Y. Ins. Law § 2314 (Consol. 2012).  If the Superintendent finds that a rate is

excessive, then he or she may suspend the rate filing, after which the insurer may request a

hearing where it will bear the burden of proving that the rate is justified.  N.Y. Ins. Law § 2321

(Consol. 2012).  And if it fails to meet that burden, then the Superintendent will reject the rate.

*Id.*  Pursuant to this scheme, MIC submitted its hazard LPI rates, rating schedules, and associated

forms to the New York Department of Insurance.  The rates were reviewed and approved.  *See*

Petersen Decl. ¶ 5. Meritplan Insurance Company, Rate Filings FOH_09-5504 and FOH_10-

6261, attached as Exhibit B.  Plaintiff Kobryn's LPI premiums were calculated from the

approved rates.  *See* Petersen Decl. at ¶ 6.

In New Hampshire, where the Davidsons' property is located, BIC is the admitted carrier

and its hazard LPI rates were filed with and approved by the New Hampshire Insurance

Department.  Pursuant to New Hampshire law, insurers must file with the insurance

commissioner "every manual, minimum premium, class rate, rating schedule or rating plan and

every other rating rule, and every modification of any of the foregoing which it proposes to use."

N.H. Rev. Stat. Ann. § 412.16(II).  As in Texas and New York, rates may not be "excessive,

inadequate, or unfairly discriminatory."  N.H. Rev. Stat. Ann. § 412:15(I).  Pursuant to these

statutory requirements, BIC submitted its rates and associated forms to the New Hampshire

Insurance Department and they were approved.  *See* Petersen Decl. ¶ 8.  Balboa Insurance

Company, Rate Filings FOH_04-2088 and FOH_07-5540, attached as Exhibit C.  The Davidsons

LPI premiums were calculated from the approved rates.  Petersen Decl. at ¶ 9.

Plaintiffs cannot escape the reach of the filed rate doctrine by unilaterally declaring that

they are not "challenging any state approved LPI 'rates' or the reasonableness of any state-

approved 'rates.'"  Compl. ¶ 86.  The crux of Plaintiffs' allegations is that their LPI charges were

excessive or unauthorized.  *See, e.g.,* Compl. ¶¶ 7, 38(a), 85, 236, 249-250, 252, 261.  Any judicial inquiry into these allegations will require the court or a jury to review the filed and approved LPI rates, because the alleged overcharges or unauthorized charges were a portion of the premiums charged to borrowers for LPI.  Comp. ¶ 62.  The premiums themselves are set based on the filed and approved rates.  If Plaintiffs were able to recover as damages the portions of their lender placed insurance premiums that allegedly were paid to a GMACM affiliate as a commission or that account for the costs of tracking the GMACM loan portfolio, they would be paying a different rate for insurance than the rate that has been filed and approved by the appropriate regulating body.  The filed rate doctrine is designed to prevent precisely this discrepancy; all insured parties should pay the same rates regardless of whether they are parties to a lawsuit.  *See Bryan v. BellSouth Comm'ns*, 377 F.3d 424, 430 (4th Cir. 2004); *Stevens v. Union Planters Corp.*, No. 00-CV-1695, 2000 WL 33128256, at *3 (E.D. Pa. Aug. 22, 2000) (allegation of kickbacks in forced hazard insurance scheme barred by filed rate doctrine); *Morales v. Attorney's Title Ins. Fund, Inc.*, 983 F. Supp. 1418, 1429 (S.D. Fla.1997) (dismissing plaintiffs' kickback claim against title insurer pursuant to filed rate doctrine because claim was nothing more than challenge to title insurance rates set by state regulators); *Calico Trailer Mfg. Co. v. Ins. Co. of N. Am.*, No. LR-C-93-717, 1994 WL 823554, at *6 (E.D. Ark. Oct. 12, 1994) (filed rate doctrine barred plaintiffs' challenge to insurance rates as inflated as result of conspiracy among defendant insurance companies).

Nor can Plaintiffs evade the doctrine by alleging a confusing and poorly defined RICO claim.  Broadly speaking, the alleged "underlying conduct of the defendants" does not control whether the filed rate doctrine applies.  "Rather the doctrine is applied strictly to prevent a plaintiff from bringing a cause of action even in the face of apparent inequities whenever either

the nondiscrimination strand or the nonjusticiability strand underlying the doctrine is implicated by the cause of action the plaintiff seeks to pursue." *Marcus*, 138 F.3d at 58-59.  On numerous occasions, courts have applied the filed rate doctrine to bar RICO claims where the plaintiff's alleged injury was the result of paying a filed and approved rate.  *See Sun City Taxpayers' Ass'n v. Citizens Utilities Co.*, 847 F. Supp. 281, 287 (D. Conn. 1994) *aff'd,* 45 F.3d 58 (2d Cir. 1995); *Wegoland Ltd.* , 27 F.3d 17; *H.J. Inc. v. Northwestern Bell Tel. Co.*, 954 F.2d 485 (8th Cir. 1992), *cert. denied*, 504 U.S. 957 (1992); *Taffet v. Southern Co.*, 958 F.2d 1514 (11th Cir. 1992) (en banc), *cert. denied*, 506 U.S. 1021 (1992).  The district court in *Sun City Taxpayers Association* explained the filed rate doctrine bars RICO claims because it "automatically prevents the plaintiff from meeting the specific standing requirements of section 1964(c) because the plaintiff cannot be said to have suffered an injury to its business or property."  847 F.Supp. at 287.  The Second Circuit in *Wegoland* further explained that even RICO claims premised on fraudulent charges were precluded by the filed rate doctrine noting:

> The fact that the remedy sought can be characterized as damages for fraud does not negate the fact that the court would be determining the reasonableness of rates [and] any attempt to determine what part of the rate previously deemed reasonable was a result of the fraudulent acts would require determining what rate would have been deemed reasonable absent the fraudulent acts, and then finding the difference between the two."

*Wegoland Ltd.*, 27 F.3d at 21 (internal citation and quotes omitted).  The filed rate doctrine has also been invoked to preclude RESPA claims.  *See Stevens*, 2000 WL 33128256, at *3.

In short, the filed rate doctrine is a complete barrier to all of Plaintiffs' claims against the Balboa Defendants.

## II.     THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER § 1962(c) OF RICO.

To establish a RICO claim, Plaintiffs must plead facts adequate to establish:  "(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3)

that the injury was caused by the violation of Section 1962." *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir.2001) (quoting *Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.*, 101 F.3d 900, 904 (2d Cir.1996)).  Plaintiffs' claim falls short because they have not adequately pleaded (1) facts to establish a pattern of racketeering activity or  (2) injuries to their business or property that were caused by the alleged RICO violation.

### A.      Plaintiffs Fail To Allege A RICO Violation.

Plaintiffs must allege seven requisite elements to state a claim for a violation of 18 U.S.C. § 1962(c):  "(1) that the defendant[s] (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983); *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 428 (S.D.N.Y. 2007).  The Amended Complaint fails because it does not allege adequate facts to establish that the Balboa Defendants committed two or more RICO predicate acts or that the Balboa Defendants invested in, maintained an interest in, or participated in the RICO enterprise.

### 1.      Plaintiffs Have Not Alleged That The Balboa Defendants Committed The RICO Predicate Acts.

The Amended Complaint, identifies three potential RICO predicate acts:  mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343, and honest services fraud in violation of 18 U.S.C. § 1346.[4] *See* 18 U.S.C. § 1961 (identifying violations that can constitute RICO predicate acts).  The Amended Complaint fails to adequately plead, however,

---

[4] Mail fraud occurs whenever a person, "having devised or intending to devise any scheme or artifice to defraud," uses the mail "for the purpose of executing such scheme or artifice ...." 18 U.S.C. § 1341. Wire fraud occurs whenever a person, "having devised or intending to devise any scheme or artifice to defraud," "transmits or causes to be transmitted by means of wire ... communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice ...." 18 U.S.C. § 1343.  Honest services fraud is mail or wire fraud where the "scheme or artifice to defraud includes a scheme or artifice to deprive another of the intangible right of honest services."  18 U.S.C. § 1346.

that the Balboa Defendants committed any of the cited RICO predicate acts for three primary reasons.  First, Plaintiffs have failed to meet the heightened pleading standard applicable to fraud-based claims pursuant to Fed. R. Civ. P. 9(b) because they have not set forth specific details about the who, what, when, where, and how of the alleged fraudulent scheme.  *See In re Sumitomo Copper Litig.*, 995 F. Supp. 451, 456 (S.D.N.Y. 1998) (plaintiffs asserting that specific mailings were fraudulent must "specify the fraud, identify the parties responsible for the fraud and where and when the fraud occurred"); *Fresh Meadow Food Servs., LLC v. RB 175 Corp.*, 282 F. App'x. 94, 97 (2d Cir. 2008) (where "a RICO claim's predicate acts include allegations of fraud, the circumstances constituting the alleged fraud must be pled with particularity").  Second, Plaintiffs have failed to allege that the Balboa Defendants, specifically and individually, committed the acts that constitute the alleged mail and wire fraud.  Third, the Balboa Defendants have not committed and cannot commit honest services fraud because they have no obligation to provide any services, honest or otherwise, to the investors for GMACM portfolio loans.

### a. Plaintiffs' Allegations Do Not Constitute A Scheme To Defraud.

The necessary elements to establish mail or wire fraud as RICO predicate acts are "(1) use of the mails or wire transfers to further (2) a scheme to defraud with (3) money or property as the object of the scheme." *Porcelli v. United States*, 404 F.3d 157, 162 (2d Cir. 2005) (*citing United States v. Gole*, 158 F.3d 166, 167 (2d Cir. 1998)).  The "scheme to defraud" element in turn has three sub-elements:  "[1] the existence of a scheme to defraud, [2] the requisite scienter (or fraudulent intent) on the part of the defendant, and [3] the materiality of the misrepresentations." *United States v. Autuori*, 212 F.3d 105, 115 (2d Cir. 2000) (internal citations omitted).  Plaintiffs' attempt to satisfy their pleading requirements with" vague references to fraudulent schemes", unaccompanied by specific details about the supposed

12

scheme's circumstances and the roles of each participant, is insufficient. *Kilkenny v. Law Office of Cushner and Garvey LLP,* No. 08-cv-588, 2012 WL 1638326, at *8 (S.D.N.Y. May 8, 2012). Additionally, and more specifically, the Amended Complaint is deficient because it fails to establish the materiality of the alleged fraudulent statements and the requisite scienter.

In the Amended Complaint Plaintiffs repeatedly refer to Defendants' alleged scheme to defraud, but they point to only two categories of allegedly fraudulent statements: (1) the LPI notices and billing statements allegedly sent to borrowers that do not disclose the alleged commission to a GMACM affiliate and that describe the amount charged to borrowers for LPI as reflecting the cost of the LPI coverage, *see* Compl. ¶¶ 104-108, and (2) the financial reports that GMACM allegedly provides to loan investors that do not disclose the commission that GMACM or its affiliate allegedly receives in connection with LPI. *Id.* ¶¶ 109-113. As discussed in detail in section II.B, Plaintiffs lack standing to assert claims based on statements made to GMACM's loan investors and thus the second category of statements cannot be the basis for their RICO claim. With respect to the first category of statements, Plaintiffs' allegations are insufficient because they have not established that the alleged misstatements or omissions were material.

In order to meet the materiality threshold for mail or wire fraud, the information "must be of some independent value or must bear on the ultimate value of the transaction." *United States v. Mittelstaedt,* 31 F.3d 1208, 1217 (2d Cir. 1994). Thus, the misrepresentation must be "likely to be deemed significant to a reasonable person considering whether to enter into the transaction." *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 170 (2d Cir. 1999) (*citing TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 449 (1976)). When viewed in context, the isolated statements in the Plaintiffs' LPI notices are not material. Viewed as a whole the notices are clearly intended to encourage borrowers to submit proof of voluntary insurance coverage if they

have it, or to go out and obtain voluntary coverage if they do not.  The notices that Plaintiffs

received clearly and explicitly told them that LPI would be placed on their properties if they did

not provide proof of hazard insurance, how much they would have to pay for the LPI, and that if

Plaintiffs provided proof of coverage after the LPI was placed they would receive a refund of all

unearned premiums (*i.e.*, the premiums for the period of time when other hazard insurance

existed).  *See* Declaration of Denise Cahen, Exhibits 1-3; October 27, 2010, December 12, 2010,

and January 30, 2011 Notice Letters to Landon Rothstein; Exhibits 4-6; April 28, 2009, June 14,

2009, and August 2, 2009 Notice Letters to Jennifer and Robert Davison; Exhibits 7-9;  February

9, 2012, March 25, 2012, and May 13, 2012 Notices Letters to Ihor Kobryn.[5]  The placement

letters even alert homeowners that "GMAC Mortgage LLC and/or an affiliate of our company

may receive compensation as a result of the placing of this insurance."  *See* Cahen Decl., Ex. 3 at

1; Ex.6, at 2; Ex. 9, at 2

     Although the Amended Complaint avers that the misstatements and omissions were

material, Compl. ¶ 244(a), it offers no facts to support this legal conclusion, and, accordingly, the

Court should not accept it as true.  *See Iqbal*, 556 U.S. at 678-79.  It is simply not plausible to

conclude that the notice letters did not include full disclosure of the pertinent facts, such that

Plaintiffs could make an informed decision in response.  As noted by another court considering

similar RICO mail fraud allegations based on LPI notice letters, the purpose of the LPI mailings

was not to defraud or deceive.  *See* W*einberger v. Mellon Mortg. Co.*, No. 98-2490, 1998 WL

599192, at *4 (E.D. Pa. Sept. 10, 1998).  The *Weinberger* court could not understand "how

letters that warn of an imminent bad deal and urge one to seek better, could possibly be

---

[5] "[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference [a document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)).

calculated to deceive anyone" and concluded that the letters could not be "reasonably calculated to deceive a person of ordinary prudence and comprehension." *Id.* at *5 (internal citation and quotes omitted).  Here too, there is no reason to conclude that the letters were likely to deceive or that Plaintiffs would have responded to the notice letters differently if the letters had included additional information about GMACM's LPI program.  The Amended Complaint includes no such allegations, nor any facts from which one could reasonably reach such a conclusion.[6] Additionally, Plaintiffs' allegation of fraud by omission cannot form the basis for mail or wire fraud because they have not alleged that the Defendants had an independent legal duty to disclose arising from a statute or fiduciary relationship.  *Johnson Elec. N. Am., Inc., v. Mabuchi Motor Corp.*, 98 F. Supp. 2d 480, 489 (S.D.N.Y. 2000) (*citing United States v. Dowling*, 739 F.2d 1445, 1449 (9th Cir. 1984), *rev'd in part on other grounds*, *Dowling v. United States*, 473 U.S. 207 (1985).  As a result, the alleged misrepresentations and omissions cannot be deemed material.

Plaintiffs' allegations are also insufficient to establish that the Balboa Defendants had the requisite intent to deceive.  At the outset, asserting the legal conclusion that all Defendants participated in the scheme "with a specific intent to defraud,"  Compl. ¶ 249, does not satisfy Plaintiffs' obligation.  *See Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir. 1987) (dismissing fraud claim where amended complaint was barren of any factual basis for "[plaintiff]'s conclusory allegations of scienter."); *Associated Wrecking, Inc. v. Local 94 Pension Fund*, No. 92-CIV-1841, 1994 WL 118987, at *5 (S.D.N.Y. Mar. 31, 1994) (discussing requirement to plead fraudulent intent and dismissing RICO claim for failure to do so); *Mills v.*

---

[6] The Amended Complaint also repeatedly alleges that GMACM and the Balboa Defendants concealed certain facts from the public, in particular that the Balboa Defendants allegedly paid commission to a GMACM affiliate and that GMACM allegedly pays nothing to NMC for tracking.  Compl. ¶¶ 73, 69.  The Amended Complaint fails to allege, however, that the Defendants had a duty to disclose this information to the public such that its concealment could be deemed fraudulent.

*Polar Molecular Corp.*, 12 F.3d  1170, 1176 (2d. Cir. 1993) (same).  Not only is this legal

conclusion insufficient, it is plainly contradicted by the alleged facts.  The LPI notice letters are

drafted to motivate borrowers to obtain voluntary insurance and inform borrowers that LPI

coverage is not optimal.  If the program was intended to encourage borrowers to retain LPI

coverage or to otherwise mislead borrowers into thinking LPI coverage was preferable to

voluntary insurance coverage it would not contain this disclaimer.  *See Weinberger*, 1998 WL

599192, at *5.

> ### b. Plaintiffs Have Not Alleged That The Balboa Defendants Are Responsible For The Alleged Instances Of Mail Or Wire Fraud.

Plaintiffs' efforts to establish that the Balboa Defendants committed mail or wire fraud

are further deficient because the Complaint contains no allegations specifically detailing the

involvement of BIC, MIC, or NMC in the allegedly fraudulent transmissions.  "[W]here, as here,

more than one defendant is charged with fraud, the [] Amended Complaint must particularize

each defendant's alleged participation in the fraud."  *Browning Ave. Realty Corp. v. Rosenshein*,

774 F. Supp. 129, 138 (S.D.N.Y. 1991) (*citing DiVittorio v. Equidyne Extractive Indus.*, 822

F.2d 1242, 1247 (2d Cir. 1987).  Plaintiffs have not offered such particularized allegations.

With respect to BIC and MIC, the Amended Complaint alleges that they are LPI

providers, *i.e.* the insurance carriers for the hazard LPI covering Plaintiffs' properties.  Compl. ¶¶

30-31.  The Amended Complaint also alleges that GMACM buys LPI from BIC and MIC.  *Id.* ¶

238(b).  It does not allege that BIC or MIC is the party responsible for sending LPI notices or

billing statements to GMACM borrowers, for determining the content of the notice letters or

billing statements, or for making the determination of what GMACM will charge borrowers for

LPI.  As noted above, BIC and MIC's LPI rates are filed with and approved by the applicable

state regulator in a particular state and BIC and MIC can only charge their filed rates.  Thus,

BIC's and MIC's only alleged involvement in the scheme is unassailable in a private civil action and they have not committed mail or wire fraud.

With respect to NMC, the Amended Complaint alleges that it performs GMACM's "insurance tracking" responsibilities and that NMC "issues notices to borrowers."  Compl. ¶¶ 238(c) and 238(n).  The Amended Complaint does not allege that NMC is responsible for the content of the notices and, thus, NMC cannot be deemed the " part[y] responsible for the fraud." *In re Sumitomo Copper Litig.*, 995 F. Supp. at 456.  Similarly, while the Amended Complaint alleges that NMC communicated by telephone with the Plaintiffs, in particular with Mr. Rothstein on January 24, 2012, Compl. ¶ 245, it does not allege that NMC made any fraudulent statements during this communication.  In combination, these allegations fall short of establishing that NMC committed mail or wire fraud.

### c. Plaintiffs Have Not Alleged And Cannot Allege That The Balboa Defendants Committed Honest Services Fraud As A RICO Predicate Act.

The Amended Complaint characterizes the alleged honest services mail or wire fraud as "a fraudulent scheme to deprive the  loan owners of their intangible right to GMACM's 'honest services' through bribes and kickbacks."  Compl. ¶ 240.  Importantly, Plaintiffs do not allege that they, or any other person or entity, had an intangible right to honest services from the Balboa Defendants, nor do they even allege that borrowers had an intangible right to GMACM's honest services.  If honest services fraud can act as the RICO predicate act for liability stemming from the alleged scheme, such liability could only conceivably run from GMACM to the loan investors.  The Balboa entities are not the proper Defendants for such a claim and borrowers are not the proper Plaintiffs.

2.      **Plaintiffs Have Not Alleged That The Balboa Defendants Participated In The Operation Or Management Of The RICO Enterprise.**

In addition to pleading RICO predicate acts, Plaintiffs had to allege that each Defendant "conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). The Supreme Court has interpreted this provision to limit RICO liability to those parties that "participate in the operation or management of [the RICO] enterprise." *Reves v. Ernst & Young*, 507 U.S. 170, 177-79 (1993). The Court of Appeals for the Second Circuit has further explained that in order to satisfy the "operation or management" test, "the RICO defendant must have played some part in directing the enterprise's affairs." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 176 (2d Cir. 1998) (internal citation and quotes omitted). In the Amended Complaint, GMACM is alleged to have "primarily managed" the Enterprise, "organized the fraudulent scheme and procured the involvement of the Defendants." Compl. ¶ 235. The Amended Complaint further alleges that "the Defendants carried out their parts of the scheme **under the direction of GMACM**." *Id.* (emphasis added). These allegations are not sufficient to establish that the *Balboa Defendants* directed the alleged enterprise. Indeed, the Amended Complaint alleges that the Balboa Defendants' role was to provide services and complete tasks as directed by GMAC—NMC by tracking loans and sending letters on GMACM's behalf, and BIC and MIC by underwriting LPI policies for GMACM. Alleging that a defendant provides "services which are helpful to an enterprise without any allegations that those entities exert control over the enterprise does not sufficiently allege a claim under RICO." *See City of New York v. Smokes–Spirits.com, Inc.*, 541 F.3d 425, 449 (2d Cir. 2008) (finding that a company and its CEO did not participate in a RICO enterprise where the company simply provided one of the defendants with internet services and software), *reversed on other grounds*, *Hemi Grp., LLC v. City of New York*,

130 S. Ct. 983 (2010); *Dietrich v. Bauer*, 76 F. Supp. 2d, 312, 347 (S.D.N.Y. 1999) ("RICO

liability may not be imposed on a defendant who merely carries on its own professional

activities.  Rather, the defendant's activities must relate to the conduct of the enterprise's affairs,

and some part in directing those affairs is required.") (internal quotes omitted).  Plaintiffs' failure

to allege facts showing that the Balboa Defendants participated in the operation or management

of the alleged RICO enterprise is yet another reason the RICO claim should be dismissed.

### B.      Plaintiffs Have Not Alleged That The RICO Violations Caused An Injury To Their Business Or Property.

In addition to alleging at least two RICO predicate acts, Plaintiffs must also allege that

the predicate acts were the proximate cause of injury to their business or property.  Absent such

allegations, Plaintiffs lack standing under RICO.  *See G-I Holdings, Inc. v. Baron & Budd*, 238

F. Supp. 2d 521, 548 (S.D.N.Y. 2002) (holding that Section 1962 limits standing to plaintiffs

whose injuries were both factually and proximately caused by the alleged RICO violation).  To

meet this requirement, Plaintiffs must show that they were "the intended targets of the RICO

violations" and that any alleged RICO injury was  the "preconceived purpose" of the RICO

activities.  *In re Am. Express Co. Shareholder Litig.,* 39 F.3d 395, 400 (2d Cir.1994) (*citing

Sperber v. Boesky,* 849 F.2d 60, 64-65 (2d Cir. 1988)).  Plaintiffs' "failure to allege that the

specifically identified RICO predicate acts proximately caused [their] injury is grounds for

dismissal at the pleading stage."  *Vicon Fiber Optics Corp. v. Scrivo*, 201 F. Supp. 2d 216, 219

(S.D.N.Y. 2002)

### 1.      Plaintiffs' Alleged Injury Was Caused By Their Own Failure To Maintain Voluntary Insurance And Not By The Alleged RICO Scheme.

The Amended Complaint alleges that Plaintiffs "paid falsely inflated, unauthorized LPI

charges by reason, and as a direct, proximate and foreseeable result of the scheme alleged."

Compl. ¶ 252.  Although the Plaintiffs here characterize the LPI charges as unauthorized, elsewhere in the Amended Complaint they admit that, pursuant to the terms of their mortgage agreements, they were obligated to maintain adequate property insurance.  *Id*. ¶ 2.  Plaintiffs further admit that the terms of their mortgage agreements also authorized GMACM to obtain insurance on Plaintiffs' behalf and to bill them for that insurance.  *Id.*  Importantly, Plaintiffs do not allege that they maintained continuous adequate voluntary insurance for their mortgaged properties.  Nor do they allege that they have been charged for LPI for time periods when voluntary coverage was in place.  As a result, there is no support for Plaintiffs' conclusory assertion that the LPI charges were unauthorized.  Any supposed harm that Plaintiffs suffered stemming from the LPI charges was the result of Plaintiffs' failures to maintain proper hazard insurance coverage for their properties.  Moreover, Plaintiffs' LPI premiums were calculated from filed and approved rates.  Accordingly the filed rate doctrine precludes Plaintiffs from alleging any injury arising from the payment of the LPI charges.  *See supra* § I.

> **2.      Plaintiffs Do Not Allege Any Injury To Their Business Or Property That Was The Result Of The Alleged Honest Services Fraud.**

The Amended Complaint alleges that GMACM deprived its investors of honest services. The alleged harm flowing from this alleged fraud is that GMACM received a double recovery because GMACM or its affiliates received a portion of the premium paid by borrowers as a commission payment and GMACM was also reimbursed for the full amount of the premium by the loan owner after a borrower defaulted.  Accepting this allegation as true, it does not constitute an injury to the borrower.  Furthermore, even any alleged consequence for the loan investors is entirely hypothetical.  There are no allegations in the Amended Complaint that any of the Plaintiffs have actually paid their LPI charges or that any of the Plaintiffs' properties have been foreclosed upon prompting their loan investors to reimburse GMACM's servicing advances

associated with their accounts.  From the alleged facts, it is not clear that GMACM's has

received any money at all in connection with Plaintiffs' hazard LPI and there are no facts alleged

that GMACM was twice reimbursed for the costs of Plaintiffs' hazard LPI.  In all, the Amended

Complaint does not identify any concrete and quantifiable injury stemming from the alleged

honest services fraud.

### III.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR CONSPIRACY TO VIOLATE RICO PURSUANT TO 18 U.S.C. § 1962(d).

Plaintiffs' failure to state a substantive RICO claim also mandates dismissal of their

RICO conspiracy claim.  *First Capital Asset Mgmt.*, 385 F.3d at 182; *Citadel Mgmt., Inc. v.*

*Telesis Trust, Inc.*, 123 F. Supp. 2d 133, 156 (S.D.N.Y. 2000) ("[A] RICO conspiracy claim

cannot stand where, as here, the elements of the substantive RICO provisions are not met.")

(citations omitted).  RICO section 1962(d) provides that "it shall be unlawful for any person to

conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Because, as

set forth above, the alleged acts do not constitute a violation of RICO Section 1962(c),

participation in a  conspiracy to commit those acts could not constitute a violation of 1962(d).

The Balboa Defendants further contend that the Amended Complaint fails to adequately plead a

conspiracy and the Balboa Defendants participation therein, but the Court need not engage in

that analysis to dismiss the RICO conspiracy claim.

### IV.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF RESPA BECAUSE PLAINTIFFS HAVE FAILED TO ALLEGE THAT THE BALBOA DEFENDANTS' CONDUCT RELATED TO A "REAL ESTATE SETTLEMENT SERVICE".

RESPA prohibits giving or receiving referral fees or unearned commissions incident to a

"real estate settlement service."  12 U.S.C. § 2607(a), (b).  The applicable regulations define a

real estate settlement as "the process of executing legally binding documents regarding a lien on

property that is subject to a federally related mortgage loan.  This process may also be called

'closing' or 'escrow' in different jurisdictions."  24 C.F.R. § 3500.2(b) (2012).  RESPA,

therefore, covers fees incident to the initial closing on real estate; the statute "does not focus on

post-settlement fees paid by mortgagors after they have purchased their houses."  *Bloom v.

Martin*, 77 F.3d 318, 321 (9th Cir. 1996); *see also Morris v. Wells Fargo Bank N.A.*, No. 11-474,

2012 WL 3929805, at *16 (W.D. Pa. Sept. 7, 2012) ("RESPA does not regulate post-settlement

fees paid by mortgagors after they have purchased their houses.") (internal quotes omitted);

*Guebara v. Saxon Mortg.*, No. 11-427, 2011 WL 1670762, at *4 (E.D. Cal. May 3, 2011)

("Where the fees or charges at issue are imposed after settlement, RESPA is inapplicable.").

Plaintiffs allege that the Balboa Defendants violated RESPA by giving GMACM

Mortgage "kickbacks" in connection with the referral of LPI business and providing free

tracking services.  Comp. ¶¶ 133, 277.  Plaintiffs offer their legal conclusion that "the placement

of LPI constitutes a 'settlement service' within the meaning of RESPA," *id.* ¶ 131, but this legal

conclusion is wrong as a matter of law, as the factual allegations offered by Plaintiffs do not

establish the placement of LPI was a settlement service.  The Amended Complaint does not

allege that the LPI was placed on the Plaintiffs' property at the time of settlement or even shortly

thereafter.  Placing insurance after closing is plainly outside the temporal scope of RESPA's

"real estate settlement" limitation.  *See, e.g.*, *McNeary-Calloway v. JP Morgan Chase Bank,

N.A.*, 863 F. Supp. 2d 928, 954 (N.D. Cal. 2012) ("Because RESPA covers only the provision of

services 'in connection with' the closing of the loan, the Court cannot conclude that providing

hazard insurance years after settlement qualifies as a settlement service."); *Arnett v. Bank of Am.

N.A.*, -- F. Supp. 2d --, 2012 WL 2848425, at *15 (D. Ore. July 11, 2012) (holding that force-

placing insurance on property more than one year after closing is beyond the scope of RESPA);

*Morris*, 2012 WL 3929805, at *15 (same).  Accordingly, Plaintiffs' RESPA claim against the Balboa Defendants must be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, the Balboa Defendants respectfully requests that the claims against them be dismissed with prejudice.


Respectfully submitted

Dated:  December 13, 2012

By:  /s Matthew P. Previn
Matthew P. Previn (MP2173)
mprevin@buckleysandler.com
**BuckleySandler LLP**
1133 Avenue of the Americas
Suite 3100
New York, New York 10036
Tel:  (212) 600-2310
Fax: (212) 600-2405

Robyn C. Quattrone (*pro hac vice*)
rquattrone@buckleysandler.com
Katherine L. Halliday (*pro hac vice*)
khalliday@buckleysandler.com
BuckleySandler LLP
1250 24th Street NW
Suite 700
Washington, DC 20010
Tel: (202) 349-8000
Fax:  (202) 349-8080

*Attorneys for Defendants Balboa*
*Insurance Company, Meritplan*
*Insurance Company, and Newport*
*Management Corporation*

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure, I hereby certify that on the 13th day of

December, 2012, I caused a true and correct copy of the foregoing to be served upon the

following via the Court's ECF Notification System.

By:  /s Matthew P. Previn
           Matthew P. Previn

## SERVICE LIST

| | |
|---|---|
| Mark A. Strauss<br>mstrauss@kmllp.com<br>Edward M. Varga<br>evarga@kmllp.com<br>J. Brandon Walker<br>bwalker@kmllp.com<br>**KIRBY MCINERNEY LLP**<br>825 Third Avenue<br>16th Floor<br>New York, NY 10022<br>Telephone: (212) 371-6600<br>Facsimile: (212) 751-2540<br>*Counsel for Plaintiffs* | Richard G. Haddad<br>rhaddad@oshr.com<br>**OTTERBOURG, STEINDLER, HOUSTON & ROSEN**<br>230 Park Avenue<br>New York, NY 10169<br>Telephone: (212) 661-9100<br>Facsimile:  (212)  682-6104<br>*Counsel for Defendants Ally Financial, Inc. and Ally Bank* |