**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**LANDON ROTHSTEIN, JENNIFER**
**DAVIDSON, ROBERT DAVIDSON,**
**and IHOR KOBRYN, individually and**
**on behalf of all others similarly situated,**

        **Plaintiffs,**

        **v.**

**ALLY FINANCIAL, INC. f/k/a GMAC**
**INC., ALLY BANK f/k/a GMAC BANK,**
**JOHN DOE CORPORATION,**
**BALBOA INSURANCE COMPANY,**
**MERITPLAN INSURANCE**
**COMPANY, and NEWPORT**
**MANAGEMENT CORPORATION,**

        **Defendants.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**ECF CASE**

12 Civ. 3412 (AJN)

## MEMORANDUM OF LAW IN SUPPORT OF THE BALBOA DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

**BuckleySandler LLP**
1133 Avenue of the Americas
Suite 3100
New York, New York 10036
Tel: (212) 600-2310
Fax: (212) 600-2405

*Counsel for Defendants Balboa*
*Insurance Company, Meritplan*
*Insurance Company and Newport*
*Management Corporation*

Of Counsel:
Robyn C. Quattrone (*pro hac vice*)
Ross E. Morrison
Katherine L. Halliday (*pro hac vice*)

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................................ 1

BACKGROUND ............................................................................................. 3

      A.     Lender-Placed Insurance ....................................................... 3

      B.     Plaintiffs ................................................................................ 4

      C.     Allegations Relating to GMAC-Balboa Relationship ............ 4

ARGUMENT ................................................................................................. 5

  I.     LEGAL STANDARD ...................................................................... 5

  II.    PLAINTIFFS' CLAIMS ARE BARRED BY THE FILED RATE
        DOCTRINE. ................................................................................. 6

  III.   THE AMENDED COMPLAINT FAILS TO STATE
        A CLAIM UNDER § 1962(C) OF RICO. ...................................... 11

      A.     Plaintiffs Fail to Allege a RICO Violation. ........................... 11

          1.    Plaintiffs Have Not Alleged that the Balboa Defendants
              Committed Any RICO Predicate Act. ........................... 12

              a.    Plaintiffs' Allegations Do Not Constitute
                   a Scheme to Defraud. ...................................... 12

              b.    Plaintiffs Have Not Alleged that the Balboa
                   Defendants are Responsible for the Alleged
                   Mail or Wire Fraud. ........................................ 17

              c.    Plaintiffs Have Not Alleged that the Balboa
                   Defendants Committed Honest Services
                   Fraud as a RICO Predicate Act. ...................... 18

              d.    Plaintiffs Have Not Alleged that the Balboa
                   Defendants Attempted to, Conspired to, or
                   Actually Did Commit Extortion. ..................... 18

          2.    Plaintiffs Have Not Alleged that the Balboa
               Defendants Participated in the Operation or
               Management of the RICO Enterprise. ........................... 20

      B.     Plaintiffs Have Not Alleged that the Purported RICO
          Violations Caused an Injury to Their Business or Property. ............ 21

  IV.   THE SAC FAILS TO STATE A RICO CONSPIRACY CLAIM. ................. 22

  V.    THE SAC FAILS TO STATE A RESPA CLAIM BECAUSE
        PLAINTIFFS FAIL TO ALLEGE THAT THE BALBOA
        DEFENDANTS' CONDUCT RELATED TO A "REAL ESTATE
        SETTLEMENT SERVICE." ............................................................ 23

CONCLUSION ............................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

Adler v. Berg Harmon Assocs.,
  790 F. Supp. 1222 (S.D.N.Y. 1992) .................................................................. 23

Arnett v. Bank of Am. N.A.,
  874 F. Supp. 2d 1021 (D. Or. 2012) ................................................................. 24

Ashcroft v. Iqbal,
  556 U.S. 662 (2009).................................................................................. 6, 14

Associated Wrecking, Inc. v. Local 94 Pension Fund,
  No. 92-CIV-1841, 1994 WL 118987 (S.D.N.Y. Mar. 31, 1994)............................ 16

Bell Atlantic Corp. v. Twombly,
  550 U.S. 544 (2007)..................................................................................... 5

Bloom v. Martin,
  77 F.3d 318 (9th Cir. 1996) .......................................................................... 23

Browning Ave. Realty Corp. v. Rosenshein,
  774 F. Supp. 129 (S.D.N.Y. 1991) .................................................................. 17

Bryan v. BellSouth Comm'ns,
  377 F.3d 424 (4th Cir. 2004) .......................................................................... 9

Calico Trailer Mfg. Co. v. Ins. Co. of N. Am.,
  No. LR-C-93-717, 1994 WL 823554 (E.D. Ark. Oct. 12, 1994)............................ 9

Citadel Mgmt., Inc. v. Telesis Trust, Inc.,
  123 F. Supp. 2d 133 (S.D.N.Y. 2000) .............................................................. 22

City of New York v. Smokes–Spirits.com, Inc.,
  541 F.3d 425, 449 (2d Cir. 2008) .................................................................... 20

Connecticut Nat'l Bank v. Fluor Corp.,
  808 F.2d 957 (2d Cir. 1987) .......................................................................... 16

Cortec Indus., Inc. v. Sum Holding L.P.,
  949 F.2d 42 (2d Cir. 1991) ........................................................................... 14

DeFalco v. Bernas,
  244 F.3d 286 (2d Cir.2001) .......................................................................... 11

Dietrich v. Bauer,
  76 F. Supp. 2d, 312 (S.D.N.Y. 1999) .............................................................. 21

*DiVittorio v. Equidyne Extractive Indus.*,
    822 F.2d 1242 (2d Cir. 1987) ...................................................... 17

*Dolan v. Fid. Nat'l Title Ins. Co.*,
    365 F. App'x. 271 (2d Cir. 2010) ................................................... 7

*Dow Jones & Co., Inc. v. Harrods, Ltd.*,
    237 F. Supp. 2d 394 (S.D.N.Y. 2002), *aff'd*, 346 F.3d 357 (2d Cir. 2003) .............................. 8

*Dowling v. United States*,
    473 U.S. 207 (1985) .................................................................... 15

*F.T.C. v. Verity International, Ltd.*,
    443 F.3d 48 (2d Cir. 2006) ............................................................ 7

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 1998) .................................................... 20, 22

*Fresh Meadow Food Servs., LLC v. RB 175 Corp.*,
    282 F. App'x. 94 (2d Cir. 2008) ................................................... 12

*G-I Holdings, Inc. v. Baron & Budd*,
    238 F. Supp. 2d 521 (S.D.N.Y. 2002) ........................................... 21

*Guebara v. Saxon Mortg.*,
    No. 11-427, 2011 WL 1670762 (E.D. Cal. May 3, 2011) ..................... 24

*Gustafson v. BAC Home Loans Servicing, LP*,
    No. SACV 11-915-JST, 2012 WL 7071488 (C.D. Cal. Dec. 26, 2012)........... 15, 16

*H.J. Inc. v. Nw. Bell Tel. Co.*,
    954 F.2d 485 (8th Cir. 1992), ..................................................... 10

*Hecht v. Commerce Clearing House, Inc.*,
    897 F.2d 21 (2d Cir. 1990) .......................................................... 23

*Hemi Grp., LLC v. City of New York*,
    130 S. Ct. 983 (2010) ................................................................. 21

*In re Am. Express Co. Shareholder Litig.*,
    39 F.3d 395 (2d Cir.1994) ........................................................... 21

*In re Sumitomo Copper Litig.*,
    995 F. Supp. 451 (S.D.N.Y. 1998) ........................................... 12, 17

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
    62 F.3d 69 (2d Cir. 1995) ........................................................... 14

*Johnson Elec. N. Am., Inc., v. Mabuchi Motor Corp.*,
    98 F. Supp. 2d 480 (S.D.N.Y. 2000) .................................................. 15

*Kilkenny v. Law Office of Cushner and Garvey LLP*,
    No. 08-cv-588, 2012 WL 1638326 (S.D.N.Y. May 8, 2012) ................................... 13

*Marcus v. AT&T Corp.*,
    138 F.3d 46 (2d Cir. 1998) ................................................................ 6, 7

*McNeary-Calloway v. JP Morgan Chase Bank, N.A.*,
    863 F. Supp. 2d 928 (N.D. Cal. 2012) ..................................................... 24

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*,
    No. 91 Civ. 2923, 1994 WL 88129 (S.D.N.Y. Mar. 15, 1994) ............................... 23

*Mills v. Polar Molecular Corp.*,
    12 F.3d  1170 (2d Cir. 1993) .............................................................. 16

*Moore v. PaineWebber, Inc.*,
    189 F.3d 165 (2d Cir. 1999) ............................................................... 13

*Morales v. Attorney's Title Ins. Fund, Inc.*,
    983 F. Supp. 1418 (S.D. Fla.1997) ......................................................... 9

*Morris v. Wells Fargo Bank N.A.*,
    No. 11-474, 2012 WL 3929805 (W.D. Pa. Sept. 7, 2012)................................. 23, 25

*Moss v. Morgan Stanly Inc.*,
    719 F.2d 5 (2d Cir. 1983) ................................................................. 11

*O'Malley v. New York City Transit Auth.*,
    896 F.2d 704 (2d Cir. 1990) ............................................................... 19

*Pani v. Empire Blue Cross Blue Shield*,
    152 F.3d 67 (2d Cir. 1998) ................................................................ 7

*Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.*,
    101 F.3d 900 (2d Cir. 1996) ............................................................... 11

*Porcelli v. United States*,
    404 F.3d 157 (2d Cir. 2005) ............................................................... 13

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993)....................................................................... 20

*Rosner v. Bank of China*,
    528 F. Supp. 2d 419 (S.D.N.Y. 2007) ...................................................... 11

*Roussin v. AARP, Inc.*,
   664 F. Supp. 2d 412 (S.D.N.Y. 2009) ............................................................ 7

*Schilke v. Wachovia Mortg.*,
   *FSB*, 820 F. Supp. 2d 825 (N.D. Ill. 2011) ............................................... 10

*Simon v. KeySpan Corp.*,
   694 F.3d 196 (2d Cir. 2012) ...................................................................... 7

*Sperber v. Boesky*,
   849 F.2d 60 (2d Cir. 1988) ...................................................................... 21

*Steven v. Union Planters Corp.*,
   No. 00-CV-1695, 2000 WL 33128256 (E.D. Pa. Aug. 22, 2000) ............ 9

*Sun City Taxpayers' Ass'n v. Citizens Utilities Co.*,
   847 F. Supp. 281 (D. Conn. 1994), *aff'd*, 45 F.3d 58 (2d Cir. 1995) ........ 10

*Taffet v. Southern Co.*,
   958 F.2d 1514 (11th Cir. 1992) (en banc), *cert. denied*, 506 U.S. 1021 (1992) ...................... 10

*TSC Indus., Inc. v. Northway, Inc.*,
   426 U.S. 438 (1976) ................................................................................ 13

*United States Fire Ins. Co. v. United Limousine Serv., Inc.*,
   303 F. Supp. 2d 432 (S.D.N.Y. 2004) ...................................................... 23

*United States v. Autuori*,
   212 F.3d 105 (2d Cir. 2000) .................................................................... 13

*United States v. Dowling*,
   739 F.2d 1445 (9th Cir. 1984) ................................................................ 15

*United States v. Gole*,
   158 F.3d 166 (2d Cir. 1998) .................................................................... 13

*United States v. Kattar*,
   840 F.2d 118 (1st Cir. 1988)................................................................... 19

*United States v. Mittelstaedt*,
   31 F.3d 1208 (2d Cir. 1994) .................................................................... 13

*Vicon Fiber Optics Corp. v. Scrivo*,
   201 F. Supp. 2d 216 (S.D.N.Y. 2002) ...................................................... 21

*Wah Chang v. Duke Energy Trading & Mktg., LLC*,
   507 F.3d 1222 (9th Cir. 2007) ................................................................. 6

*Wegoland Ltd. v. NYNEX Corp.*,
    27 F.3d 17 (2d Cir. 1994) ........................................................................... 6, 10

*Weinberger v. Mellon Mortg. Co.*,
    No. 98-2490, 1998 WL 599192 (E.D. Pa. Sept. 10, 1998) ........................... 14, 15, 16

**Statutes**
12 U.S.C. § 2601 ............................................................................................................ 2

12 U.S.C. § 2607 ..................................................................................................... 5, 23

18 U.S.C. § 1341 .......................................................................................................... 12

18 U.S.C. § 1343 .......................................................................................................... 12

18 U.S.C. § 1346 ..................................................................................................... 12, 13

18 U.S.C. § 1951 .......................................................................................................... 12

18 U.S.C. § 1961 .......................................................................................................... 12

18 U.S.C. §§ 1961-1968 ................................................................................................ 5

**Regulations**
24 C.F.R. § 3500.2 (2012) ........................................................................................... 23

N.H. Rev. Stat. Ann. § 412.16 ....................................................................................... 8

N.H. Rev. Stat. Ann. § 412:15 ....................................................................................... 8

N.Y. Ins. Law § 2303 (Consol. 2013) ........................................................................... 8

N.Y. Ins. Law § 2305 (Consol. 2013) ........................................................................... 8

N.Y. Ins. Law § 2314 (Consol. 2013) ........................................................................... 8

Tex. Ins. Code Ann. § 2251.052 (West 2013) ............................................................... 7

Tex. Ins. Code Ann. § 2251.101 (West 2013) ............................................................... 7

Tex. Ins. Code Ann. § 2251.103 (West 2013) ............................................................... 7

Defendants Balboa Insurance Company ("BIC"), Meritplan Insurance Company ("MIC"), and Newport Management Corporation ("NMC"; and together with BIC and MIC, the "Balboa Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss the Second Amended Complaint ("SAC"), of Plaintiffs Landon Rothstein ("Rothstein"), Jennifer and Robert Davidson (the "Davidsons"), and Ihor Kobryn ("Kobryn") (collectively, "Plaintiffs"), pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

This case involves lender-placed hazard insurance ("hazard LPI"), which is insurance coverage obtained by mortgage lenders or servicers to protect mortgaged properties when borrowers fail to maintain adequate hazard insurance on their properties, as required by most standard mortgage agreements.  Mortgage agreements typically require LPI because lenders need to protect the collateral underlying their loans when borrowers fail to obtain their own insurance.

Although Plaintiffs' SAC is replete with unsubstantiated and overbroad generalizations about a scheme to defraud borrowers and loan owners, the barebones factual allegations offered about Plaintiffs' own experience with hazard LPI are largely innocuous.  Rothstein alleges that GMAC Mortgage ("GMACM") charged him slightly more than one hundred dollars for three months of LPI obtained for his property in Splendora, Texas; the Davidsons allege that GMACM charged them approximately $240 for three months of hazard LPI for their property in New Hampshire; and Kobryn alleges that GMACM charged him approximately $1,260 for four months of hazard LPI for his property on Staten Island.  The SAC provides no information about how much LPI coverage was in place for each property or how much Plaintiffs believe this LPI coverage was worth.  Nor does the SAC allege that GMACM lacked authorization to obtain LPI for Plaintiffs' properties when they failed to maintain adequate voluntary insurance or that

Plaintiffs' mortgages did not authorize GMACM to bill Plaintiffs for any LPI it obtained. Likewise, the SAC does not contend that Plaintiffs' LPI was deficient or that its total cost was commercially unreasonably.

Nonetheless, the SAC contends that Plaintiffs were victims of a massive fraudulent scheme enacted by GMACM and the Balboa Defendants to bill Plaintiffs for inflated or unauthorized charges, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, and Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601.  Specifically, Plaintiffs claim that BIC and MIC gave "rebates/kickbacks" to GMACM, which failed to disclose them to Plaintiffs or reduce the premiums it charged them by the amount of those "rebates/kickbacks."

The Court should dismiss Plaintiffs' claims as to the Balboa Defendants.  First, the filed rate doctrine bars the claims.  The rates used to calculate the premiums for Plaintiffs' hazard LPI are based on BIC or MIC rates that comply with the applicable state filing laws and are approved wherever required by the applicable state regulators.  Under well established Second Circuit and other case authority, these rates, and the LPI premiums calculated from them, are immune from challenge in a private civil suit.  Second, when stripped of its unsupported legal conclusions and sweeping generalizations, the SAC falls well short of stating any claims against the Balboa Defendants.  With respect to the asserted RICO claims, Plaintiffs have failed to plead predicate RICO acts, a RICO injury, or any causal link between the vague predicate acts and the poorly drawn RICO injury.  Plaintiffs also fail to state a RESPA claim against the Balboa Defendants because they have not alleged that the Balboa Defendants' conduct related to a "real estate settlement service," as required by that statute.  For all of these reasons, the Court should dismiss Plaintiffs' claims against the Balboa Defendants.

## BACKGROUND

Much of Plaintiffs' voluminous SAC has nothing to do with the Balboa Defendants or LPI for GMACM.  Nearly a third of the SAC relates to the alleged relationship between GMACM and defendants Ally Bank and Ally Financial, Inc.  SAC ¶¶ 147-242.  The SAC also includes numerous allegations relating to the LPI and mortgage servicing industry generally, *see, e.g., id.* ¶¶ 46-63; quotes substantial portions of a press release from the New York Department of Financial Service relating to its investigation of the LPI industry, *see id.* ¶¶ 100-103; and discusses in detail a "request for proposal" relating to LPI issued by Fannie Mae.  *Id.* ¶¶ 89-99.  These allegations are not specific to the Balboa Defendants and have very little, if any, relevance to this case.  Plaintiffs seem to assume that all mortgage servicers and LPI providers operate in the same manner and that allegations as to the industry generally apply specifically to the Balboa Defendants.  They do not.  Moreover, as detailed below, the allegations that actually relate to the Balboa Defendants and the Plaintiffs fail to state a claim.

### A.    Lender-Placed Insurance

Nearly every mortgage agreement includes a provision requiring the borrower to maintain adequate homeowner's insurance to protect both the borrower's interest in his or her home and the lender's interest in securing the collateral underlying its mortgage loan.  SAC ¶¶ 2, 46.  The vast majority of borrowers comply with this requirement, but, for those who do not, mortgage agreements generally authorize the lender to obtain insurance for the borrower's property and to charge the cost of that insurance to the borrower.  *Id.*  This insurance is commonly referred to as lender-placed insurance or LPI.  Mortgage servicers, like GMACM, typically enter into arrangements with third party vendors who perform the servicers' tracking duties, *i.e.*, they monitor the servicers' loan portfolios to determine whether borrowers have the

required insurance coverage, notify the borrowers in the event of a lapse or coverage deficiency, and secure LPI when needed.  *Id.* ¶¶ 5-6.  The SAC alleges that in 2003 "GMACM entered into an agreement to purchase LPI from Balboa and Meritplan" and that "GMACM also hired Newport to perform insurance tracking on its behalf."  *Id.* ¶ 67.

### B.    Plaintiffs

The SAC alleges that Rothstein has a mortgage loan serviced by GMACM on property located at 97 County Road 3701, Splendora, Texas, and that GMACM  charged him $105 to reimburse it for the cost of LPI obtained by GMACM from MIC for the mortgaged property from October 6, 2010, to January 4, 2011.  SAC ¶ 21.  The SAC alleges that the Davidsons have a mortgage loan serviced by GMACM on property located at 32 Dunbarton Estates, Nottingham, New Hampshire, and that GMACM charged them $239 to reimburse it for the cost of LPI obtained by GMACM from BIC on the mortgaged property from April 14, 2009, to July 4, 2009.  SAC  ¶ 22.  The SAC alleges that Kobryn has a mortgage loan serviced by GMACM on a property located at 29 Meredith Avenue, Staten Island, New York and that he was charged $1,260.78 by GMACM for the cost of LPI obtained by GMACM from MIC for the mortgaged property from January 19, 2012, to May 22, 2012.  SAC ¶ 23.

### C.    Allegations Relating to GMAC-Balboa Relationship

Plaintiffs allege that GMACM, along with BIC, MIC, and NMC devised a "kickback scheme" at the inception of their relationship in 2003 that required BIC and MIC to pay "secret rebates" to GMACM while borrowers are billed the full price of the LPI.  SAC ¶ 69.  Plaintiffs contend that this "scheme" involves kickbacks in "two forms."  *Id.* ¶ 8.  First, Plaintiffs contend that BIC and MIC pay commissions to an affiliate of GMACM, defendant John Doe, which then transfers those commissions to GMACM.  *Id.* ¶ 75, 78.  Plaintiffs allege that this unidentified affiliate is not a bona fide insurance agent and did not perform insurance agency functions to

BIC or MIC.  *Id.* ¶ 76.  According to Plaintiffs, GMACM also incorporates the gross insurance

charges into its servicing advances and "to the extent borrowers fail to pay, loan owners bear the

inflated charges through reduced loan proceeds and higher loss severities."  *Id.* ¶ 69.

   Second, Plaintiffs allege that NMC provides free tracking services to GMACM, and that

BIC and MIC pay NMC for these services, instead of GMACM.  *Id.* ¶ 71.  Plaintiffs allege that

NMC's payments are "derived from the gross premiums that GMACM pays to Balboa and

Meritplan for  the LPI" and is routed from BIC and MIC to NMC via "intercompany expense

allocations."  *Id.*  According to Plaintiffs, the free tracking services "constitute rebates/kickbacks

in kind."  *Id.* ¶ 72.[1]

   Plaintiffs allege that GMACM did not reduce the premiums it charged Plaintiffs by the

amount of both of these alleged "rebates/kickbacks," and that Plaintiffs therefore have overpaid

for their LPI by the amount of the "rebates/kickbacks."  *Id.* ¶¶ 110, 257.  Based on these

allegations, the SAC asserts three claims against the Balboa Defendants:  (1) Violation of RICO,

18 U.S.C. §§ 1961-1968; (2) Conspiracy to Violate RICO, 18 U.S.C. § 1962(d); and (3)

Violation of RESPA, 12 U.S.C. § 2607(a).  Four additional claims (Counts 4 through 7 of the

SAC) are asserted only against Ally Bank and Ally Financial.

<u>**ARGUMENT**</u>

## I.   LEGAL STANDARD

   To survive a motion to dismiss, a plaintiff's pleadings must contain factual allegations

that are "enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007).  Indeed, a plaintiff's claim must be "plausible on its face."

---

[1] To support their allegation that GMACM does not pay for tracking services, Plaintiffs cite to an excerpt from the testimony of Michael Squillante, Senior Vice President for GMACM, before the New York Department of Financial Services.  *See* SAC ¶¶ 73-74.  Plaintiffs fail, however, to reference Mr. Squillante's written testimony in connection with the same hearing, stating that no commissions are paid to GMACM or its affiliates in connection with LPI.  *See* Written Testimony of GMAC Mortgage LLC, *available at* http://www.dfs.ny.gov/insurance/hearings/fp_052012/GMAC_Mortgage_LLC.  Although these factual allegations are irrelevant to the Balboa Defendants' motion, Plaintiffs' selective references to public records are misleading.

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  While the allegations in the SAC are assumed to be true, the allegations must amount to more than mere labels and conclusions or a mere formulaic recitation of the elements of a cause of action.  *Twombly*, 550 U.S. at 545.  Legal conclusions are not entitled to an assumption of truth.  *Iqbal*, 556 U.S. at 678-79.

## II.    PLAINTIFFS' CLAIMS ARE BARRED BY THE FILED RATE DOCTRINE.

The filed rate doctrine mandates dismissal of Plaintiffs' claims against the Balboa Defendants.  Indeed, that doctrine bars any claims challenging Plaintiffs' LPI premiums, because those premiums were based on insurance rates that applicable state regulators approved. "Simply stated, the doctrine holds that any 'filed rate' – that is, one approved by the governing regulatory agency – is *per se* reasonable and unassailable in judicial proceedings brought by ratepayers."  *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 19 (2d Cir. 1994).  The doctrine's rationale is two-fold.  First, the doctrine preserves a regulator's authority to determine the reasonableness of rates and prohibits courts from second-guessing a regulator's determination in that regard.  *Id.*, 27 F.3d at 17; *see Marcus v. AT&T Corp.*, 138 F.3d 46, 58 (2d Cir. 1998); *Roussin v. AARP, Inc.*, 664 F. Supp. 2d 412, 415 (S.D.N.Y. 2009).  Second, the doctrine ensures that regulated entities charge only those rates that have been approved and thereby prevents discrimination against certain consumers.  *Marcus*, 138 F.3d at 59; *Wegoland*, 27 F.3d at 21 ("[A]pplication of the filed rate doctrine prevents discrimination in rates . . . because victorious plaintiffs would wind up paying less than non-suing ratepayers.") (citing *Keogh v. Chicago & Northwestern Railway Co.*, 260 U.S. 156 (1922)).  The combined force of both justifications, often referred to as the nonjusticiability and nondiscrimination prongs, has given rise to an extremely robust doctrine whose "fortification against direct attack is impenetrable." *Wah Chang v. Duke Energy Trading & Mktg., LLC*, 507 F.3d 1222, 1225 (9th Cir. 2007).  Whenever either prong is implicated by a claim, the filed rate doctrine applies.  *See Dolan v. Fid. Nat'l Title Ins.*

*Co.*, 365 F. App'x. 271, 276 (2d Cir. 2010) (citing *Marcus*, 138 F.2d at 62).  Moreover, the applicability of the doctrine "does not depend on the culpability of the defendant's conduct or the possibility of inequitable results."  *Simon v. KeySpan Corp.*, 694 F.3d 196, 205 (2d Cir. 2012) (internal citations and quotes omitted).  "Rather, the doctrine is applied strictly to prevent a plaintiff from bringing a cause of action even in the face of apparent inequities whenever either the nondiscrimination strand or the nonjusticiability strand underlying the doctrine is implicated" by the claim.  *Marcus*, 138 F.3d at 58-59.

Here, either BIC or MIC has a filed lender-placed hazard insurance program in every state, including in Texas, New York, and New Hampshire, the states where Plaintiffs' properties are located.  In those states, BIC or MIC submitted its lender-placed hazard insurance rates and forms to the applicable state regulators; the regulators approved those rates and forms; and Plaintiffs' LPI premiums then were calculated using the approved rates for their respective states, as follows:

- MIC is an admitted carrier in Texas, where Rothstein's property is located.  The Texas Department of Insurance ("TDI") determines whether property insurance rates are "excessive, inadequate, unreasonably, or unfairly discriminatory for the risks to which the rate applies."  *See* Tex. Ins. Code Ann. § 2251.052(b) (West 2013).  Texas' insurance code requires property insurers to file "all rates, applicable rating manuals, supplementary rating information, and additional information required" with the insurance commissioner, who shall disapprove the rate if he/she "determines that the rate does not comply with the [statutory requirements]."  *Id.* §§ 2251.101(a), 103(a).  Pursuant to this scheme, MIC submitted its hazard LPI rates, rating schedules and associated forms to the TDI, which reviewed and approved the rates.  *See* Declaration of Kurt Petersen ("Petersen Decl.") at ¶ 4 and Ex. A.[2]  Rothstein's LPI premiums then were calculated using the approved rates.  *Id.* at ¶ 6.

---

[2]  The Court may take judicial notice of filings with government agencies that are a matter of public record, including the filing of and approval by state agencies of insurance rates.  *See Roussin.*, 664 F. Supp. 2d at 415-16 (taking judicial notice of rate filings and approval of those rates) (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998)).  The Court also may consider the Peterson Declaration because the filed rate doctrine acts to deprive Plaintiffs of standing, s*ee  F.T.C. v. Verity International, Ltd.*, 443 F.3d 48, 63 (2d Cir. 2006) (analyzing assertion of filed rate doctrine as challenge to standing); *Morales v. Attorneys' Title Insurance Fund, Inc.*, 983 F. Supp. 1418, 1429 (S.D. Fla. 1997) ("At the core of the filed rate doctrine is the issue of standing"), and when ruling on a factual challenge to subject matter jurisdiction, the court "is not confined to the pleadings, but may examine extraneous evidence submitted with the motion and make any findings of fact necessary to determine the

- MIC is an admitted carrier in New York, where Kobryn's property was located.  The New York Department of Insurance ("DOI") reviewed property insurance rates to ensure that they are not "excessive, inadequate, unfairly discriminatory, destructive of competition or detrimental to the solvency of insurers."  N.Y. Ins. Law § 2303.[3]  Rates must be submitted to the superintendent along with their supporting information, and insurers are barred from charging premiums in excess of the filed rates.  *Id.* §§ 2305(c), 2314.  Pursuant to this scheme, MIC submitted its hazard LPI rates, rating schedules, and associated forms to the DOI, which reviewed and approved the rates.  *See* Petersen Decl. ¶ 5 and Ex. B.  Kobryn's LPI premiums then were calculated from the approved rates.  *Id.* ¶ 6.

- BIC is an admitted carrier in New Hampshire, where the Davidsons' property is located.  Insurers must file with the New Hampshire insurance commissioner "every manual, minimum premium, class rate, rating schedule or rating plan and every other rating rule, and every modification of any of the foregoing which it proposes to use."  N.H. Rev. Stat. Ann. § 412.16(II).  Rates may not be "excessive, inadequate, or unfairly discriminatory."  *Id.* § 412:15(I).  Pursuant to these statutory requirements, BIC submitted its rates and associated forms to the New Hampshire Insurance Department, which approved the rates.  *See* Petersen Decl. ¶ 8 and Ex. C.  The Davidsons' LPI premiums then were calculated from the approved rates.  Petersen Decl. ¶ 9.

Because state regulators approved Plaintiffs' respective LPI rates, the filed rate doctrine prohibits Plaintiffs from challenging those approved rates, any specific component of the rates, or the premiums calculated from the rates in a private civil action.  Despite Plaintiffs' prolix SAC, the crux of their claims is simply that they paid too much for their LPI, allegedly because their premiums were not reduced by "subtracting the rebates/kickbacks" purportedly paid by BIC and MIC to GMACM.  SAC, ¶ 110; *id.*, ¶¶ 7, 39(a), 85, 257(l), 268, 279-80 (alleging that Plaintiffs' damages are based on the "falsely inflated, unauthorized" charges including in their LPI premiums).  These allegations clearly implicate the nondiscrimination and nonjusticiability strands of the filed rate doctrine.  First, any judicial inquiry into these allegations will require a review of Plaintiffs' filed and approved LPI rates, because the alleged overcharges were a portion of Plaintiffs' insurance premiums, which themselves are set based on the rates.  Second,

---

existence of subject matter jurisdiction," *Dow Jones & Co., Inc. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 404 (S.D.N.Y. 2002), *aff'd*, 346 F.3d 357 (2d Cir. 2003).

[3] On October 3, 2011, the New York DOI was combined with that State's Banking Department to form the Department of Financial Services, which currently has authority over property insurance rates.

if Plaintiffs were able to recover as damages the portions of their LPI premiums that allegedly included the "rebates/kickbacks," they would not pay the LPI rate filed with and approved by the appropriate state regulators, but would be paying less than that rate.  The filed rate doctrine is designed to prevent both of these results.  *See, e.g., Bryan v. BellSouth Comm'ns, Inc.*, 377 F.3d 424, 430 (4th Cir. 2004); *Steven v. Union Planters Corp.*, No. 00-CV-1695, 2000 WL 33128256, at *3 (E.D. Pa. Aug. 22, 2000) (allegation of kickbacks in forced hazard insurance scheme barred by filed rate doctrine); *Morales*, 983 F. Supp. at 1429 (dismissing plaintiffs' kickback claim against title insurer pursuant to filed rate doctrine because claim was nothing more than challenge to title insurance rates set by state regulators); *Calico Trailer Mfg. Co. v. Ins. Co. of N. Am.*, No. LR-C-93-717, 1994 WL 823554, at *6 (E.D. Ark. Oct. 12, 1994) (filed rate doctrine barred plaintiffs' challenge to insurance rates as inflated as result of conspiracy among defendant insurance companies).

Indeed, the Second Circuit and other courts have held that the filed rate doctrine compels the dismissal of RICO and fraud claims in very similar circumstances to those presented here.  In *Wegoland*, telephone ratepayers brought RICO and fraud claims, alleging that their phone company had fraudulently inflated its filed and approved phone rates.  Similar to Plaintiffs' claims here, the ratepayers claimed that the company had hidden the fact that a portion of its costs on which the rates were based upon were fraudulent and not real costs, and that the company therefore had overcharged them by the amount of these costs.  The Second Circuit held that the filed rate doctrine precluded these claims, noting:

> The fact that the remedy sought can be characterized as damages for fraud does not negate the fact that the court would be determining the reasonableness of rates [and] any attempt to determine what part of the rate previously deemed reasonable was a result of the fraudulent acts would require determining what rate would have been deemed reasonable absent the fraudulent acts, and then finding the difference between the two.

*Id.*, 27 F.3d at 21 (internal citation and quotes omitted).  The Second Circuit further emphasized that regulators are best suited to inquire into and uncover purported fraud, and that allowing private plaintiffs to bring challenges to allegedly fraudulent rates would lead to discrimination among ratepayers.  *Id.* at 21-22.[4]

*Wegoland* compels dismissal of Plaintiffs' claims here:  like the *Wegoland* plaintiffs, Plaintiffs allege that their premiums, which are based on filed and approved LPI rates, included fraudulent overcharges, and they seek damages based on those overcharges.  Allowing Plaintiffs' claims to proceeds would necessarily enmesh the Court into determining what portion of the premiums previously deemed reasonable were the result of fraud – an inquiry that is only the proper province of regulators.  *Id.* at 21 ("Apart from participating in the political process and filing complaints with the regulatory agencies, individual ratepayers have no role in attacking the reasonableness of filed rates.").

In addition, numerous other courts also have applied the filed rate doctrine to bar RICO claims where the plaintiff's alleged injury was the result of paying a filed and approved rate, s*ee Sun City Taxpayers' Ass'n v. Citizens Utilities Co.*, 847 F. Supp. 281, 287 (D. Conn. 1994) *aff'd*, 45 F.3d 58 (2d Cir. 1995); *H.J. Inc. v. Nw. Bell Tel. Co.*, 954 F.2d 485 (8th Cir. 1992); *Taffet v. Southern Co.*, 958 F.2d 1514 (11th Cir. 1992) (en banc), and to preclude RESPA claims, *see Stevens*, 2000 WL 33128256, at *3, and state law claims challenging LPI premiums that include commission payments.  *See Schilke v. Wachovia Mortg., FSB*, 820 F. Supp. 2d 825, 835-36 (N.D. Ill. 2011) (holding that plaintiffs' claims for damages from mortgagor and LPI hazard insurer that effectively sought a refund of a portion of LPI premiums paid were barred by the

---

[4] The Second Circuit also held that the application of the filed rate doctrine does not depend on whether, as here, the case is brought as a putative class action.  *Id.*, 27 F.3d at 21; *see also Sun City Taxpayers Ass'n*, 45 F.3d at 62 (noting that the filed rate doctrine "exists for reasons independent of the type of plaintiff maintaining the action").

filed rate doctrine).  For all of these reasons, the filed rate doctrine bars all of Plaintiffs' claims against the Balboa Defendants.[5]

## III.   THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER § 1962(c) OF RICO.

Although the Court need not reach the issue, Plaintiffs' RICO claims also fail because the SAC does not allege facts sufficient to establish the required elements:  "(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962."  *DeFalco v. Bernas,* 244 F.3d 286, 305 (2d Cir. 2001) (quoting *Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.*, 101 F.3d 900, 904 (2d Cir. 1996)). Plaintiffs' claim falls short because they have not adequately plead any of these required elements.

### A.      Plaintiffs Fail to Allege a RICO Violation.

Plaintiffs must allege seven requisite elements to state a claim for a violation of 18 U.S.C. § 1962(c):  "(1) that the defendant[s] (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce."  *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983); *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 428 (S.D.N.Y. 2007).  The SAC fails because it does not allege adequate facts to establish that the Balboa Defendants committed two or more RICO predicate acts or that the Balboa Defendants invested in, maintained an interest in, or participated in the RICO enterprise.

---

[5] The few existing decisions allowing claims regarding filed LPI rates to proceed, *see Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273 (S.D. Fla. 2009); *Ellsworth v.  U.S. Bank, N.A.*, No. 12-02506 LG, 2012 WL 6176905 (N.D. Cal. Dec. 11, 2012), are contrary to the Second Circuit precedent cited above and other authorities holding that the filed rate doctrine bars such claims.

**1.      Plaintiffs Have Not Alleged that the Balboa Defendants Committed Any RICO Predicate Act.**

The SAC fails to plead adequately that the Balboa Defendants committed any of the four cited RICO predicate acts: mail fraud, 18 U.S.C. § 1341, wire fraud, 18 U.S.C. § 1343, honest services fraud, 18 U.S.C. § 1346, and extortion, attempted extortion or conspiracy to commit extortion in violation of the Hobbs Act, 18 U.S.C. § 1951(a).  *See* 18 U.S.C. § 1961 (identifying violations that can constitute RICO predicate acts).  First, Plaintiffs fail to meet the heightened pleading standard applicable to their fraud-based claims (*i.e.*, 18 U.S.C. §§ 1341, 1343 and 1346), pursuant to Fed. R. Civ. P. 9(b), because they have not set forth specific details about the who, what, when, where, and how of the alleged fraudulent scheme.  *See Fresh Meadow Food Servs., LLC v. RB 175 Corp.*, 282 F. App'x. 94, 97 (2d Cir. 2008) (where "a RICO claim's predicate acts include allegations of fraud, the circumstances constituting the alleged fraud must be pled with particularity"); *In re Sumitomo Copper Litig.*, 995 F. Supp. 451, 456 (S.D.N.Y. 1998) (plaintiffs asserting mail fraud must "specify the fraud involved, identify the parties responsible for the fraud and where and when the fraud occurred").  Second, Plaintiffs fail to allege that the Balboa Defendants, specifically and individually, committed the acts that constitute the alleged mail and wire fraud.  Third, the Balboa Defendants have not committed and cannot commit honest services fraud because they have no obligation to provide any services, honest or otherwise, to the investors for GMACM portfolio loans.  Fourth, Plaintiffs have not alleged facts to suggest that the Balboa Defendants committed, attempted to commit, or conspired to commit extortion.

**a.      Plaintiffs' Allegations Do Not Constitute a Scheme to Defraud.**

Plaintiffs' attempt to satisfy their heightened pleading requirements for their mail, wire and honest services fraud claims with "vague references to fraudulent schemes," unaccompanied

by specific details about the supposed scheme's circumstances and the roles of each participant, is insufficient to meet their burden.  *Kilkenny v. Law Office of Cushner and Garvey L.L.P.,* No. 08 Civ. 588, 2012 WL 1638326, at *8 (S.D.N.Y. May 8, 2012) (internal quotes omitted).  The necessary elements to establish mail or wire fraud as RICO predicate acts are "(1) use of the mails or wire transfers to further (2) a scheme to defraud with (3) money or property as the object of the scheme." [6]  *Porcelli v. United States*, 404 F.3d 157, 162 (2d Cir. 2005) (citing *United States v. Gole*, 158 F.3d 166, 167 (2d Cir. 1998)).  The "scheme to defraud" requirement has three sub-elements:  "[1] the existence of a scheme to defraud, [2] the requisite scienter (or fraudulent intent) on the part of the defendant, and [3] the materiality of the misrepresentations." *United States v. Autuori*, 212 F.3d 105, 115 (2d Cir. 2000) (internal citations omitted).

In the SAC, Plaintiffs repeatedly refer to Defendants' alleged scheme to defraud, but they attribute only one category of allegedly fraudulent statements to any of the Balboa Defendants: the LPI notices and billing statements allegedly sent to Plaintiffs by NMC that did not disclose the alleged "rebates/kickbacks," and that described the amount charged to Plaintiffs for LPI as reflecting the true cost of the LPI coverage to GMAC.  *See* SAC ¶¶ 108-114, 264.  These allegations do not meet the materiality threshold for mail or wire fraud, because the alleged misrepresentations or omissions are not "likely to be deemed significant to a reasonable person considering whether to enter into the transaction."  *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 170 (2d Cir. 1999) (citing *TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 449 (1976)); *see also United States v. Mittelstaedt,* 31 F.3d 1208, 1217 (2d Cir. 1994) (misrepresentations must be "of some independent value or must bear on the ultimate value of the transaction").  Viewed as a whole the LPI notices and statements are clearly intended to encourage borrowers to submit

---

[6]  Honest services fraud is mail or wire fraud where the "scheme or artifice to defraud included scheme or artifice to deprive another of the intangible right of honest services."  18 U.S.C. § 1346.

proof of voluntary insurance coverage if they have it, or to go out and obtain voluntary coverage if they do not.  The notices that Plaintiffs received clearly and explicitly told them that LPI would be placed on their properties if they did not provide proof of hazard insurance, how much they would have to pay for the LPI, and that if Plaintiffs provided proof of coverage after the LPI was placed they would receive a refund of all unearned premiums (*i.e.*, the premiums for the period of time when other hazard insurance was in place).  *See* Declaration of Denise Cahen ("Cahen Decl."), Exhibits 1-3 (LPI Notice Letters to Rothstein); Exhibits 4-6 (same as to the Davidsons); Exhibits 7-9 (same as to Kobryn).[7]  The placement letters also alert homeowners that "GMAC Mortgage LLC and/or an affiliate of our company may receive compensation as a result of the placing of this insurance."  *See* Cahen Decl., Ex. 3 at 1; Ex. 6 at 2; Ex. 9 at 2.[8]

      Although the SAC avers that the alleged misstatements and omissions in the notices and billing statements sent by NMC were material, SAC ¶ 263(a), it offers no facts to support this legal conclusion, and, accordingly, the Court should not accept it as true.  *See Iqbal*, 556 U.S. at 678-79.  It is simply not plausible to conclude that, even if the notices and letters did not include full disclosure of the facts concerning alleged "kickbacks/rebates," and misstated GMAC's true costs for the LPI, Plaintiffs could not make an informed decision whether to obtain voluntary insurance or have it placed for them.  Indeed, as noted by multiple courts considering similar RICO mail fraud allegations based on LPI notice letters, the purpose of the LPI mailings was not to defraud or deceive.  *See, e.g.*, W*einberger v. Mellon Mortg. Co.*, No. 98-2490, 1998 WL 599192, at *4, 5 (E.D. Pa. Sept. 10, 1998) (wondering "how letters [concerning LPI] that warn of

---

[7]  "'[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint,' the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)); SAC, ¶¶ 108, 264 (referencing various notices allegedly sent by NMC to Plaintiffs).

[8]  However, as stated in GMACM's written testimony to the New York Department of Financial Services, no commissions were actually paid. *See supra* note 1.

an imminent bad deal and urge one to seek better, could possibly be calculated to deceive anyone" and concluding that the letters could not be "reasonably calculated to deceive a person of ordinary prudence and comprehension."); *Gustafson v. BAC Home Loans Servicing, LP*, No. SACV 11-915-JST, 2012 WL 7071488, at *6-7 (C.D. Cal. Dec. 26, 2012) (dismissing RICO count premised on claim that LPI notice letters from BIC and MIC -- substantively similar to the ones received by the Plaintiffs here -- contained fraudulent misrepresentation or omissions). There simply is no reason to conclude that the letters were likely to deceive or that Plaintiffs would have responded to the notice letters differently if the letters had included additional information about GMACM's LPI program.  The SAC includes no such allegations, nor any facts from which one could reasonably reach such conclusions.[9]

Additionally, Plaintiffs' allegation of fraud by omission in the notices and billing statements sent by NMC cannot form the basis for mail or wire fraud because the SAC does not allege that the Balboa Defendants had an independent legal duty to disclose arising from a statute or fiduciary relationship.  *Johnson Elec. N. Am., Inc., v. Mabuchi Motor Corp.*, 98 F. Supp. 2d 480, 489 (S.D.N.Y. 2000) (citing *United States v. Dowling*, 739 F.2d 1445, 1449 (9th Cir. 1984), *rev'd in part on other grounds, Dowling v. United States*, 473 U.S. 207 (1985)).  Nor have they adequately supported their legal conclusion that the omission was material.  Here the *Gustafson* court's analysis is apt:

> the Court fails to see how Defendants' failure to inform Plaintiffs and class members that force-placed insurance practices also generated profits for Defendants is a material omission "reasonably calculated to deceive" Plaintiffs. Not only is this argument circular, but the clear information provided to Plaintiffs precludes a finding that these "omissions" were reasonably calculated to deceive

---

[9] The SAC also repeatedly alleges that GMACM and the Balboa Defendants concealed certain facts from the public, in particular that the Balboa Defendants allegedly paid commission to a GMACM affiliate, a contention that is contradicted by the letters Plaintiffs received, and that GMACM allegedly pays nothing to NMC for tracking.  SAC ¶¶ 69, 73.  The SAC fails to allege, however, that the Defendants had a duty to disclose this information to the public such that its concealment could be deemed fraudulent.

Plaintiffs when they were warned that, among other things, commissions would be paid to Bank of America's affiliates.

*Gustafson*, 2012 WL 7071488, at *7. For the same reasons, the alleged misrepresentations and omissions here should not be deemed material.

Plaintiffs' allegations are also insufficient to establish that the Balboa Defendants had the requisite intent to deceive. At the outset, asserting the legal conclusion that all Defendants participated in the scheme "with a specific intent to defraud," SAC ¶ 268, does not satisfy Plaintiffs' obligation. *See Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir. 1987) (dismissing fraud claim where amended complaint was barren of any factual basis for "[plaintiff]'s conclusory allegations of scienter"); *Associated Wrecking, Inc. v. Local 94 Pension Fund*, No. 92-CIV-1841, 1994 WL 118987, at *5 (S.D.N.Y. Mar. 31, 1994) (discussing requirement to plead fraudulent intent and dismissing RICO claim for failure to do so); *see also Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d. Cir. 1993) (same). Not only is this legal conclusion insufficient, it is plainly contradicted by the alleged facts. The plain language of the LPI notice letters encourages borrowers to obtain voluntary insurance and informs them that LPI coverage is not optimal. If the letters were intended to encourage borrowers to retain LPI coverage or otherwise to mislead borrowers into thinking LPI coverage was preferable to voluntary insurance coverage, they would not contain such assertions. *See Weinberger*, 1998 WL 599192, at *5 (noting that even if the defendants had intended to defraud borrowers, the wording of their LPI letters warning of its increased cost and reduced coverage "was not reasonably calculated to deceive a person of ordinary prudence and comprehension") (internal quotations omitted).

16

**b.**  **Plaintiffs Have Not Alleged that the Balboa Defendants are Responsible for the Alleged Mail or Wire Fraud.**

Plaintiffs' efforts to establish that the Balboa Defendants committed mail or wire fraud are further deficient because the Complaint contains no allegations specifically detailing the involvement of BIC, MIC, or NMC in the allegedly fraudulent transmissions.  "[W]here, as here, more than one defendant is charged with fraud, the [] Amended Complaint must particularize each defendant's alleged participation in the fraud." *Browning Ave. Realty Corp. v. Rosenshein*, 774 F. Supp. 129, 138 (S.D.N.Y. 1991) (citing *DiVittorio v. Equidyne Extractive Indus.*, 822 F.2d 1242, 1247 (2d Cir. 1987)).  Plaintiffs have not offered such particularized allegations.

With respect to BIC and MIC, the SAC alleges that they are LPI providers, *i.e.*, the insurance carriers for the hazard LPI covering Plaintiffs' properties.  SAC ¶¶ 30-31.  The SAC also alleges that GMACM buys LPI from BIC and MIC and that premiums associated with the LPI are transmitted to and from BIC and MIC via wires.  *Id.* ¶ 257(b, e, f, and g), 263(f, g, and h).  It does not allege that BIC or MIC is the party responsible for sending LPI notices or billing statements to GMACM borrowers, for determining the content of the notice letters or billing statements, or for making the determination of what GMACM will charge borrowers for LPI.  These allegations are insufficient to establish BIC's or MIC's involvement in any fraud.

With respect to NMC, the SAC alleges that it performs GMACM's "insurance tracking" responsibilities and that NMC "issues notices to borrowers."  SAC ¶¶ 257(c) and (o), 263(a), 264.  However, the SAC does not allege that NMC is responsible for the content of the notices and, thus, NMC cannot be deemed the "part[y] responsible for the fraud."  *In re Sumitomo Copper Litig.*, 995 F. Supp. at 456.  Similarly, while the SAC alleges that NMC communicated by telephone with borrowers, SAC ¶ 263(b), it does not allege that NMC made any fraudulent

statements during any such communications.  In combination, these allegations fall short of establishing that NMC committed mail or wire fraud.

> **c.  Plaintiffs Have Not Alleged that the Balboa Defendants Committed Honest Services Fraud as a RICO Predicate Act.**

The SAC attempts to establish honest services fraud as a RICO predicate act by alleging that the Defendants had a "a fraudulent scheme to deprive [GMACM's]  loan owners of their intangible right to GMACM's 'honest services' through bribes and kickbacks."  SAC ¶ 259. While the SAC is not explicit, this alleged predicate act only applies to the Ally Defendants, as proxies for GMACM.  The charge cannot logically be asserted against the Balboa Defendants, who had no direct interactions with GMACM's investors nor any indirect duties or responsibilities to them.  Moreover, Plaintiffs are not even the proper parties to assert such a claim.  If honest services fraud can act as the RICO predicate act for liability stemming from the alleged scheme, such liability could only conceivably run from GMACM to the loan investors. Plaintiffs do not allege that they, or any other person or entity, had an intangible right to honest services from the Balboa Defendants or GMACM.  Plaintiffs' assertion of honest services fraud therefore cannot serve as a RICO predicate act against the Balboa Defendants.

> **d.  Plaintiffs Have Not Alleged that the Balboa Defendants Attempted to, Conspired to, or Actually Did Commit Extortion.**

Like Plaintiffs' fraud-based RICO predicates, Plaintiffs' attempt to allege extortion as a RICO predicate also fails.  To establish a Hobbs Act violation as a predicate RICO act, Plaintiffs had to allege that the Balboa Defendants used "actual or threatened force, violence or fear . . . to obtain money or property to which [they] had no lawful claim." *Ctr. Cadillac, Inc. v. Bank Leumi Trust Co. of New York*, 859 F. Supp. 97, 104-06 (S.D.N.Y. 1994) *aff'd*, 99 F.3d 401 (2d Cir. 1995); 18 U.S.C. ¶ 1951(b)(2).  As an initial matter, the SAC does not allege that Rothstein,

the Davidsons, or the Kobryns ever paid any of their LPI charges nor does it allege that any of the Balboa Defendants (or any other entity) ever told Rothstein, the Davidsons, or the Kobryns that they would foreclose on their homes if they did not pay the LPI charges.  The SAC alleges only that Plaintiffs received notices that stated the cost of LPI, that the cost was the borrower's responsibility, and that the costs would be added to monthly mortgage payments.  SAC ¶ 275.  Plaintiffs combine these statements with the general assertion that GMACM could foreclose on borrowers to collect unpaid amounts due on their mortgage accounts.  *Id.* ¶ 274.  However, there is no allegation that GMACM or any of the Balboa Defendants made any express statements or took any express actions that would cause a reasonable borrower to assume that foreclosure would be imminent for failure to pay LPI charges.  Tellingly, the notices themselves include no threats of foreclosure.  *See* Cahen Decl., Exs. 1-9.  These allegations are not sufficient to state a claim for extortion; if they were, every borrower who disputes any charge on their mortgage account could bring a claim for extortion because ultimately non-payment of the disputed charge could lead to foreclosure.  *See O'Malley v. New York City Transit Auth.*, 896 F.2d 704, 709 (2d Cir. 1990) ("A simple request for money claimed to be due does not, and cannot, fulfill the requirements of an act of extortion.").

Moreover, even if the Defendants had told Plaintiffs that they would foreclose on their homes if they did not pay their LPI charges -- which they did not -- they could not be liable for attempted or actual extortion because "a threat of economic harm… is not 'per se' wrongful"  if the entity has a legal right to the funds or property at issue.  *United States v. Kattar*, 840 F.2d 118, 123 (1st Cir. 1988); *O'Malley*, 896 F.2d at 709 (holding that use of economic fear as leverage to drive a hard bargain in ordinary commercial relationship will not support a RICO claim based on extortion).  Plaintiffs have not alleged that their mortgage agreements do not give

GMACM the authority to foreclose nor does the SAC allege that the mortgage agreements were void or unenforceable for any reason. Plaintiffs therefore cannot rely on the Hobbs Act to support their RICO claim.

### 2. Plaintiffs Have Not Alleged that the Balboa Defendants Participated in the Operation or Management of the RICO Enterprise.

Plaintiffs' RICO claim also is deficient because Plaintiffs have not alleged that each Defendant "conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). The Supreme Court has interpreted this provision to limit RICO liability to those parties that "participate in the operation or management of [the RICO] enterprise." *Reves v. Ernst & Young*, 507 U.S. 170, 177-79 (1993). The Second Circuit has further explained that in order to satisfy the "operation or management" test, "the RICO defendant must have played some part in directing the enterprise's affairs." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 176 (2d Cir. 2004) (internal citation and quotes omitted). In the SAC, GMACM is alleged to have "primarily managed" the Enterprise, "organized the fraudulent scheme and procured the involvement of the Defendants." SAC ¶ 254. While the SAC does allege that Defendants carried out their roles with "discretion," *id.*, such a conclusory allegation is insufficient to establish that the Balboa Defendants *directed* the alleged enterprise. Indeed, the SAC alleges that the Balboa Defendants' role was to provide services and complete tasks as directed by GMAC -- NMC by tracking loans and sending letters on GMACM's behalf, and BIC and MIC by underwriting LPI policies for GMACM. Alleging that a defendant provides "services which are helpful to an enterprise without any allegations that those entities exert control over the enterprise does not sufficiently allege a claim under RICO." *See City of New York v. Smokes–Spirits.com, Inc.*, 541 F.3d 425, 449 (2d Cir. 2008) (finding that a company and its CEO did not

participate in a RICO enterprise where the company simply provided one of the defendants with internet services and software), *reversed on other grounds, Hemi Grp., LLC v. City of New York*, 130 S. Ct. 983 (2010); *Dietrich v. Bauer*, 76 F. Supp. 2d. 312, 347 (S.D.N.Y. 1999) ("RICO liability may not be imposed on a defendant who merely carries on its own professional activities.  Rather, the defendant's activities must relate to the conduct of the enterprise's affairs, and some part in directing those affairs is required.") (internal quotes omitted).  Plaintiffs' failure to allege facts showing that the Balboa Defendants participated in the operation or management of the alleged RICO enterprise is an additional reason the Court should dismiss Plaintiffs' RICO claim.

### B.    Plaintiffs Have Not Alleged that the Purported RICO Violations Caused an Injury to Their Business or Property.

On top of their failure to allege at least two RICO predicate acts, Plaintiffs fail to allege that the predicate acts were the proximate cause of injury to their business or property.  Absent such allegations, Plaintiffs lack standing under RICO.  *See G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 548 (S.D.N.Y. 2002) (holding that Section 1962 limits standing to plaintiffs whose injuries were both factually and proximately caused by the alleged RICO violation).  To establish standing, Plaintiffs must show that they were "the intended targets of the RICO violations" and that any alleged RICO injury was the "preconceived purpose" of the RICO activities.  *In re Am. Express Co. Shareholder Litig.,* 39 F.3d 395, 400 (2d Cir. 1994) (citing *Sperber v. Boesky,* 849 F.2d 60, 64-65 (2d Cir. 1988)).  Plaintiffs' "failure to allege that the specifically identified RICO predicate acts proximately caused [their] injury is grounds for dismissal at the pleading stage." *Vicon Fiber Optics Corp. v. Scrivo*, 201 F. Supp. 2d 216, 219 (S.D.N.Y. 2002).

The SAC alleges that Plaintiffs "paid falsely inflated, unauthorized LPI charges by reason, and as a direct, proximate and foreseeable result of the scheme alleged."  SAC ¶ 279. Although the Plaintiffs here characterize the LPI charges as unauthorized, elsewhere in the SAC they admit that, pursuant to the terms of their mortgage agreements, they were obligated to maintain adequate property insurance.  *Id*. ¶ 2.  Plaintiffs further admit that the terms of their mortgage agreements also authorized GMACM to obtain insurance on Plaintiffs' behalf and to bill them for that insurance.  *Id.*  Importantly, Plaintiffs do *not* allege that they maintained continuous adequate voluntary insurance for their mortgaged properties.  Nor do they allege that they have been charged for LPI for time periods when voluntary coverage was in place.  As a result, there is no support for Plaintiffs' conclusory assertion that the LPI charges were unauthorized.  To the contrary, any supposed harm that Plaintiffs suffered stemming from the LPI charges was the result of Plaintiffs' failures to maintain proper hazard insurance coverage for their properties.

## IV.     THE SAC FAILS TO STATE A RICO CONSPIRACY CLAIM.

Plaintiffs' failure to state a substantive RICO claim also mandates dismissal of their RICO conspiracy claim.  RICO section 1962(d) provides that "it shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  Because, as set forth above, the alleged acts do not constitute a violation of RICO Section 1962(c), participation in a conspiracy to commit those acts could not constitute a violation of 1962(d). *See First Capital Asset Mgmt.*, 385 F.3d at 182; *Citadel Mgmt., Inc. v. Telesis Trust, Inc.*, 123 F. Supp. 2d 133, 156 (S.D.N.Y. 2000) ("[A] RICO conspiracy claim cannot stand where, as here, the elements of the substantive RICO provisions are not met.") (citation omitted).

In addition, the SAC fails to plead a conspiracy adequately because "it does not allege facts implying any agreement involving each of the defendants to commit at least two predicate

acts." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25-26 (2d Cir. 1990).  Instead, it includes only conclusory allegations that the Defendants "were each associated with the Enterprise" and "agreed to conduct and participate" in its affairs.  SAC ¶ 292.  This Court has repeatedly dismissed similarly conclusory allegations as insufficient to state a RICO conspiracy claim.  *See, e.g., United States Fire Ins. Co. v. United Limousine Serv., Inc*., 303 F. Supp. 2d 432, 453-54 (S.D.N.Y. 2004); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young,* No. 91 Civ. 2923, 1994 WL 88129, at *30 (S.D.N.Y. Mar. 15, 1994); *Adler v. Berg Harmon Assocs.,* 790 F. Supp. 1222 (S.D.N.Y. 1992).

## V.  THE SAC FAILS TO STATE A RESPA CLAIM BECAUSE PLAINTIFFS FAIL TO ALLEGE THAT THE BALBOA DEFENDANTS' CONDUCT RELATED TO A "REAL ESTATE SETTLEMENT SERVICE."

Plaintiffs' RESPA count is fatally flawed because the provision of LPI is not a real estate settlement service.  RESPA prohibits giving or receiving referral fees or unearned commissions incident to a "real estate settlement service."  12 U.S.C. § 2607(a) and (b).  The applicable regulations define a real estate settlement as "the process of executing legally binding documents regarding a lien on property that is subject to a federally related mortgage loan.  This process also may be called 'closing' or 'escrow' in different jurisdictions."  24 C.F.R. § 3500.2(b) (2012).  RESPA, therefore, covers fees incident to the initial closing on real estate; the statute "does not focus on post-settlement fees paid by mortgagors after they have purchased their houses."  *Bloom v. Martin*, 77 F.3d 318, 321 (9th Cir. 1996); *see also Morris v. Wells Fargo Bank N.A.*, No. 11-474, 2012 WL 3929805, at *15 (W.D. Pa. Sept. 7, 2012) (dismissing claim alleging that LPI commissions violated RESPA because "RESPA does not regulate post-settlement fees paid by mortgagors after they have purchased their houses.") (internal quotes omitted); *Guebara v. Saxon Mortg.*, No. 11-427, 2011 WL 1670762, at *4 (E.D. Cal. May 3,

2011) ("Where the fees or charges at issue are imposed after settlement, RESPA is inapplicable.").

Plaintiffs allege that the Balboa Defendants violated RESPA by giving GMACM "rebates/kickbacks" in connection with the referral of LPI business, and providing free tracking services.  SAC ¶¶ 131, 306.  Plaintiffs offer their legal conclusion that "the placement of LPI constitutes a 'settlement service' within the meaning of RESPA," *id.* ¶¶ 138, 305, but this legal conclusion is wrong as a matter of law, as the factual allegations offered by Plaintiffs do not establish the placement of LPI was a settlement service.  The SAC does not allege that the LPI was placed on any of the Plaintiffs' properties at the time their respective mortgage loans closed, or even shortly thereafter.  Placing insurance after closing is plainly outside the temporal scope of RESPA's "real estate settlement" limitation.  *See, e.g.*, *Lane v. Wells Fargo Bank N.A.*, No. 12-04026, 2013 WL 269133 at*15 (N.D. Cal. Jan 24, 2013) (dismissing RESPA claim in agreement with "weight of decisions . . . that have determined that a lender's purchase of force-placed insurance years after the mortgage agreement was signed and the house was bought does not constitute a 'service provided in connection with a real estate settlement'") (internal quotations omitted); *McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, 863 F. Supp. 2d 928, 954 (N.D. Cal. 2012) (dismissing claim challenging the bank's LPI program, reasoning that "because RESPA covers only the provision of services 'in connection with' the closing of the loan, the Court cannot conclude that providing hazard insurance years after settlement qualifies as a settlement service."); *Arnett v. Bank of Am. N.A.*, 874 F. Supp. 2d 1021, 1039-40 (D. Or. 2012) (holding that force-placing insurance on property more than one year after closing is

24

beyond the scope of RESPA); *Morris*, 2012 WL 3929805, at *15 (same).  Accordingly,

Plaintiffs' RESPA claim against the Balboa Defendants should be dismissed.[10]

## CONCLUSION

For the foregoing reasons, the Balboa Defendants respectfully request that the claims

against them be dismissed with prejudice.

Dated:  New York, New York
        February 22, 2013

                                                 Respectfully submitted,

                                                 BuckleySandler LLP
                                                 Counsel for the Balboa Defendants

By:    /s/ Ross E. Morrison
             Ross E. Morrison
             1133 Avenue of the Americas
             Suite 3100
             New York, New York 10036
             Tel:  (212) 600-2310
             Fax: (212) 600-2405
             rmorrison@buckleysandler.com

             Robyn C. Quattrone (*pro hac vice*)
             Katherine L. Halliday (*pro hac vice*)
             1250 24th Street NW
             Suite 700
             Washington, DC 20010
             Tel: (202) 349-8000
             Fax:  (202) 349-8080
             rquattrone@buckleysandler.com
             khalliday@buckleysandler.com

---

[10]  Finally, although the Court need not reach the issue, the RESPA claims of plaintiffs Rothstein and the Davidsons are barred by RESPA's one year statute of limitations, because those plaintiffs challenge LPI charges from 2010 and 2009, respectively.  *See Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 289 (S.D.N.Y. 2011) (citing 12 U.S.C. § 2614).

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure, I hereby certify that on the 25th day of

February, 2013, I caused a true and correct copy of the foregoing to be served upon the following

via the Court's ECF Notification System.

By:  /s/ Ross E. Morrison
Ross E. Morrison

## SERVICE LIST

| | |
|---|---|
| Mark A. Strauss<br>mstrauss@kmllp.com<br>Edward M. Varga<br>evarga@kmllp.com<br>J. Brandon Walker<br>bwalker@kmllp.com<br>**KIRBY MCINERNEY LLP**<br>825 Third Avenue<br>16th Floor<br>New York, NY 10022<br>Telephone: (212) 371-6600<br>Facsimile: (212) 751-2540<br>*Counsel for Plaintiffs* | Richard G. Haddad<br>rhaddad@oshr.com<br>**OTTERBOURG, STEINDLER, HOUSTON & ROSEN**<br>230 Park Avenue<br>New York, NY 10169<br>Telephone: (212) 661-9100<br>Facsimile:  (212)  682-6104<br>*Counsel for Defendants Ally Financial, Inc. and Ally Bank* |